**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| EILEEN BRODSKY and RHONDA DIAMOND, individually and on behalf of all others similarly situated, | ) ) ) | |
| | ) | Case No.: |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ALDI INC., COFFEE HOLDING COMPANY, INC., and PAN AMERICAN COFFEE CO. LLC. | ) ) ) | |
| | ) | |
| Defendants. | | |

**CLASS ACTION COMPLAINT**

Plaintiffs Eileen Brodsky and Rhonda Diamond ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this action against Defendants ALDI Inc. ( "Aldi"), Coffee Holding Company, Inc. ("Coffee Holding"), and Pan American Coffee Co. LLC ("Pan American") (collectively, "Defendants"). Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

**NATURE OF THE ACTION**

1.      This is a putative class action lawsuit on behalf of purchasers of Beaumont coffee products (collectively, the "Coffee Products") against Defendants for manufacturing, distributing, and selling underfilled Coffee Products.

2.     Aldi is one of the fastest growing grocery retailers in the nation, serving millions of consumers across the United States each month.[1] Aldi has nearly 2,000 stores across 36 states and is on track to become the third-largest grocery retailer by store count by the end of 2022.[2]

3.     Defendants engaged in widespread false and deceptive advertising on their Beaumont Coffee Products. In a practice that offends reasonable consumer expectations, Defendants employ a classic bait-and-switch scheme that causes unsuspecting consumers to spend more money for less than the advertised amount of coffee they believe they are purchasing. The packaging and labeling of the Coffee Products prominently advertise that they will produce a certain number of servings when, in fact, they do not.

4.     In this case, Plaintiff Brodsky purchased Beaumont Coffee Products that prominently advertise on their front labels that they "MAKE[] UP TO 210 6 OZ CUPS." One serving of Beaumont Coffee consists of one (1) tablespoon of ground coffee and one (1) serving of water ("6 fl oz"). To make the advertised 210 servings, the Coffee Products would have to contain approximately 210 tablespoons of ground coffee. But the Coffee Products purchased by Plaintiff Brodsky contained only approximately ~137 tablespoons of ground coffee.

5.     Similarly, Plaintiff Diamond purchased Beaumont Coffee Products that prominently advertise on their front labels that they "MAKE[] UP TO 90 6 OZ CUPS. To make the advertised 90 servings, the Coffee Products would have to contain approximately 90 tablespoons of ground coffee. But the Coffee Products purchased by Plaintiff Diamond contained only approximately ~64 tablespoons of ground coffee.

6.     All of Defendants' Beaumont Coffee Products feature the same deceptive advertising. These include Defendants' 100% Colombian Roast, Class Roast, and Decaffeinated

_____

[1] https://www.aldi.us/en/about-aldi/faqs/about-aldi/ (last accessed Dec. 4, 2020).

[2] *Id.*

Coffee.  On each of these Coffee Products, the front label prominently and conspicuously states

the number of six-fluid-ounce servings of coffee the cannister will produce.  As shown below,

for example, the front label of the Beaumont 100% Colombian Roast states that the 24.2-ounce

cannister "MAKES UP TO 210 6 OZ CUPS."



7.      One serving of Beaumont Coffee consists of one (1) tablespoon of ground coffee

and one (1) serving of water ("6 fl oz").  This yields one (1) six-fluid-ounce serving of coffee.

To make the advertised 210 servings, therefore, the 100% Colombian Roast would have to

contain approximately 210 tablespoons of ground coffee. But it contains only approximately 137 tablespoons of ground coffee."

8.     As explained above, and detailed in the chart below, the Coffee Products do not yield the number of cups advertised by Defendants. Consumers reasonably expect that the Coffee Products will produce the number of cups promised on the label. However, they do not. Defendants uniformly and systematically misrepresents the actual contents of their Coffee Products. The chart below demonstrates that the Coffee Products are significantly underfilled:

| Product | Weight | Advertised Cups | No. of Cups | % Underfill |
|---|---|---|---|---|
| Classic Roast | 865 g | 240 | 173 | 28.9% |
| 100% Colombian Roast | 686 g | 210 | 137.2 | 34.7% |
| Decaf | 320 kg | 90 | 64 | 28.9% |

9.     Plaintiffs, the Class, and Subclass Members relied to their detriment on Defendants' representations regarding the number of servings each Coffee Product would yield. Plaintiffs and Class and Subclass Members would not have paid to purchase Defendants' Coffee Products – or would not have paid as much as they did to purchase them – had they known the truth about the products' actual serving yields. Plaintiffs and Class and Subclass Members thus suffered monetary damages as a result of Defendants' deceptive and false representations.

**JURISDICTION AND VENUE**

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C § 1332(d)(2)(a) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, there are over 100 members of the putative class, and at least certain Plaintiffs, as well as most members of the proposed class, are citizens of states different from any of the Defendants.

11.     This Court has personal jurisdiction over Defendants because they conduct substantial business within Illinois, including the manufacturing, sale, marketing, and advertising of the Coffee Products.  Aldi also maintains its corporate headquarters and principal place of business in this judicial district.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant Aldi is headquartered in this judicial district and, therefore, a substantial part of the decisions that led to the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district.

## PARTIES

13.     Plaintiff Eileen Brodsky resides in Bloomington, New York.  In August 2020,, Ms. Brodsky purchased a cannister of Beaumont 100% Colombian Ground Coffee, 22.4 oz, for approximately $6.00 from an Aldi located in Middletown, New York.  Ms. Brodsky read the Coffee Product's labeling stating that the cannister "makes up to 210" six-fluid-ounce cups of coffee before purchasing the Coffee Product.  In reliance on this representation, Ms. Brodsky purchased the Coffee Product for her own personal use.

14.     Plaintiff Rhonda Diamond resides in Yucaipa, California.  In January 2020, Ms. Diamond purchased a cannister of Beaumont Classic Roast, 11.3 oz, for approximately $5.00 from an Aldi located in Yucaipa, California.  Ms. Diamond read the Coffee Product's labeling stating that the cannister "makes up to 90" six fluid-ounce cups of coffee before purchasing the Coffee Product.  In reliance on this representation, Ms. Diamond purchased the Coffee Product for her own personal use.

15.     Plaintiffs would not have purchased the Beaumont Coffee Products – or would not have paid as much as they did for such products – had they known that Defendants misrepresented the number of servings each cannister would produce.  Plaintiffs were further

damaged in their purchases of Beaumont Coffee Products because Defendants' false advertisements increased consumer demand, which in turn led to an artificial price increase.

16. Plaintiffs are susceptible to this reoccurring harm because they cannot be certain that Defendants have corrected this deceptive and false advertising scheme, and they want to continue to purchase Defendants' Coffee Products. Plaintiffs greatly enjoy Beaumont coffee, but they currently cannot trust that Defendants will label and/or advertise their Coffee Products truthfully and accurately. Plaintiffs simply do not have the resources to ensure that Defendants are complying with state and federal law with respect to the labeling and advertising of their Beaumont Coffee Products.

17. Additionally, because of the number of Coffee Products involved in Defendants' deceit, and the likelihood that Defendants may yet develop and market additional Coffee Products that also misrepresent the actual serving yield, Plaintiffs may again, by mistake, purchase a falsely-advertised product from Defendants under the mistaken impression that Defendants have corrected their deceptive and false advertising scheme.

18. Defendant Aldi Inc. is a corporation organized and existing under the laws of the state of Illinois, with its principal place of business at 1200 N. Kirk Rd. Batavia, IL 60510. Aldi is directly involved in the manufacturing, sale, and distribution of Beaumont Coffee Products, and is responsible for the advertising, marketing, trade dress, and packaging of Beaumont Coffee Products. Aldi developed, marketed, and sold the Coffee Products during the class period. The planning and execution of the advertising, marketing, labeling, packaging, and corporate operations concerning the Coffee Products and the "makes up to" claims was primarily carried out in Illinois.

19. Defendant Pan American Coffee Co. LLC is a limited liability company organized and existing under the laws of the state of Delaware, with its principal place of

business at 500 16th St. Hoboken, NJ 07030.  Pan American is a private label coffee roaster  and supplier of the Coffee Products.  Pan American manufactures, packages, distributes Beaumont Coffee, and is responsible for advertising, marketing, labeling, and packaging of the Coffee Products.  Pan American, in concert with Aldi and Coffee Holdings, developed the Coffee Products during the class period.

20.     Defendant Coffee Holding Company, Inc. is a corporation organized and existing under the laws of the state of Nevada, with its principal place of business at 3475 Victory Blvd, Staten Island, NY 10314.  Coffee Holding is a private label coffee roaster and wholesale supplier of the Coffee Products.  Coffee Holding manufactures, packages, distributes Beaumont Coffee, and is responsible for advertising, marketing, labeling, and packaging of the Coffee Products. Coffee Holdings, in concert with Aldi and Pan American, developed the Coffee Products during the class period.

## **FACTUAL ALLEGATIONS**

21.     Defendants' advertising and marketing of Beaumont Coffee Products is false and misleading and omits material information.  The Coffee Products prominently advertise on the front label that each cannister "Makes Up To _____ Cups."  One serving of Beaumont Coffee consists of (1) tablespoon of ground coffee per one (1) six-fluid-ounce serving.  Consumers reasonably expect that the Coffee Product will yield the number of cups advertised on the front label.  Nowhere on the Coffee Product packaging do Defendants inform consumers that the cannister will not produce the number of cups advertised on the front label.  Defendants' misrepresentations and/or omissions violate consumers' reasonable expectations and, as alleged herein, California's and New York's consumer protection statutes.  The number of servings each Beaumont Coffee Product actually produces per tablespoon is objective factual proof that the Coffee Products are falsely advertised.

7

22.     Throughout the class period defined below, Defendants have engaged in, and continue to engage in, an advertising and marketing campaign that misrepresents their Beaumont Coffee Products.  Defendants have engaged in, and continue to engage in, a pattern of willful conduct, through affirmative misrepresentations and/or material omissions, designed to mislead and lure consumers into purchasing Coffee Products they would not have otherwise purchased. As a result of this deception, Defendants have sold thousands, if not millions, of Coffee Products to unsuspecting consumers across the country, including in New York and California.

23.     Defendants' advertising claims are false, misleading, and deceptive because Defendants willfully misrepresents and omits from the labeling and packaging of their Coffee Products information that is material to consumers' purchasing decision – the number of servings of coffee that each cannister will produce.  Defendants, thus, intentionally mislead consumers into purchasing their Coffee Products based on false, misleading, and deceptive advertising that portrays the Coffee Products as having characteristics that they do not, in fact, have.

24.     In making the false, misleading, and deceptive representations and omissions described above, Defendants knew and/or intended that consumers would purchase their Coffee Products and pay more for them under the false – but reasonable – belief that each cannister would produce more cups of coffee than it actually does.  By advertising so prominently that the Coffee Products produce more cups than they actually do, Defendants prove that information about serving yield is material to consumers.  If such information were not material, Defendants would not feature it in capital letters on the front label of every Beaumont Coffee Product.

25. Any reasonable consumer would rely on Defendants' false, misleading, and deceptive representations and/or omissions about serving yield when deciding whether to purchase a Beaumont Coffee Product. Plaintiffs and Class and Subclass Members did so to their detriment. Defendants' representations and/or omissions misled Plaintiffs and Class and Subclass Members and are likely to mislead the broader consuming public.

26. As an immediate, direct, and proximate result of Defendants' false, misleading, and deceptive representations and/or omissions, Plaintiffs and Class and Subclass Members were injured in that they: (1) paid money for Coffee Products that were not what Defendants represented; (2) were deprived of the benefit of the bargain because the Coffee Products they purchased were different than what Defendants advertised; and (3) were deprived of the benefit of the bargain because the Coffee Products they purchased had less value than what Defendants represented.

27. Had Defendants not made the false, misleading, and deceptive representations and/or omissions alleged herein, Plaintiffs and Class and Subclass Members would not have purchased the Coffee Products or would not have paid as much as they did for such products. Thus, each Plaintiff and Class and Subclass member suffered an injury in fact and lost money or property as result of Defendants' wrongful conduct.

## CLASS ALLEGATIONS

28. Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

29.     Plaintiffs seek to represent a class defined as all people who purchased any Beaumont Coffee Product falsely advertising the number of coffee cups that the product would purportedly produce during the applicable statute of limitations and who have not received a refund or credit for their purchase(s) (the "Class").  Specifically excluded from the Class are Defendants, Defendants' officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendants, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendants and/or Defendants' officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

30.     Plaintiff Eileen Brodsky also seeks to represent a subclass consisting of Class Members who reside in New York (the "New York Subclass").

31.     Plaintiff Rhonda Diamond also seeks to represent a subclass consisting of Class Members who reside in California (the "California Subclass").

32.     Subject to additional information obtained through further investigation and discovery, the foregoing definitions of the Class and Subclasses may be expanded or narrowed by amendment or amended complaint.

33.     **Numerosity.**  The Class and Subclasses Members are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable.  Upon information and belief, Plaintiffs reasonably estimate that there are hundreds of thousands of Members in the Class and in each Subclass.  Although the precise number of Class and Subclass Members is unknown to Plaintiffs, it is known by Defendants and may be determined through discovery.

34.     **Existence and predominance of common questions of law and fact.**  Common questions of law and fact exist as to all Members of the Class and Subclasses and predominate over any questions affecting only individual Class or Subclass members.  These common legal and factual questions include, but are not limited to, the following:

(a)     Whether Defendants made false and/or misleading statements to the consuming public concerning the serving yield in the Coffee Products;

(b)     Whether Defendants omitted material information to the consuming public concerning the actual serving yield in the Coffee Products;

(c)     Whether Defendants' labeling and packaging for the Coffee Products is misleading and/or deceptive;

(d)     Whether Defendants engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising and sale of the Coffee Products;

(e)     Whether Defendants' representations concerning the Coffee Products were likely to deceive a reasonable consumer;

(f)     Whether Defendants' omissions concerning the Coffee Products were likely to deceive a reasonable consumer;

(g)     Whether Defendants represented to consumers that the Coffee Products have characteristics, benefits, or qualities that they do not have;

(h)     Whether Defendants advertised the Coffee Products with the intent to sell them not as advertised;

(i)     Whether Defendants falsely advertised the Coffee Products;

(j)     Whether Defendants made and breached express and/or implied warranties to Plaintiffs and Class and Subclass Members about the Coffee Products;

(k) Whether Defendants' representations, omissions, and/or breaches caused injury to Plaintiffs and Class and Subclass Members; and

(l) Whether Plaintiffs and Class and Subclass Members are entitled to damages.

35. **Typicality.** Plaintiffs' claims are typical of the claims of the other Members of the Class and Subclasses in that, among other things, all Class and Subclass Members were deceived (or reasonably likely to be deceived) in the same way by Defendants' false and misleading advertising claims about the serving yield of their Beaumont Coffee Products. All Class and Subclass Members were comparably injured by Defendants' wrongful conduct as set forth herein. Further, there are no defenses available to Defendants that are unique to Plaintiffs.

36. **Adequacy of Representation.** Plaintiffs will fairly and adequately protect the interests of the Members of the Class and Subclasses. Plaintiffs have retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiffs intend to vigorously prosecute this action on behalf of the Class and Subclasses. Furthermore, Plaintiffs have no interests that are antagonistic to those of the Class or Subclasses.

37. **Superiority.** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class and Subclass Members are relatively small compared to the burden and expense of individual litigation of their claims against Defendants. It would, thus, be virtually impossible for Class or Subclass Members to obtain effective redress on an individual basis for the wrongs committed against them. Even if Class or Subclass Members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. It would also increase the delay and expense to all parties and the court system from the issues raised by

this action. The class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

38.     In the alternative, the Class and Subclasses may also be certified because:

(a)     the prosecution of separate actions by individual Class and Subclass Members would create a risk of inconsistent or varying adjudications with respect to individual Class or Subclass Members that would establish incompatible standards of conduct for Defendants;

(b)     the prosecution of separate actions by individual Class and Subclass Members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class and Subclass Members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c)     Defendants have acted or refused to act on grounds generally applicable to the Class and to each Subclass as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the Members of the Class and to the Members of each Subclass as a whole.

**COUNT I**
**Violation Of Consumers Legal Remedies Act ("CLRA")**
**Cal. Civ. Code § 1750, *et seq.***
**(On Behalf Of The California Subclass)**

39.     Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

40.     Plaintiff Rhonda Diamond brings this claim individually and on behalf of the Members of the proposed California Subclass against Defendants.

13

41.     Defendants violated California's Consumers Legal Remedies Act (the "CLRA") by engaging in the following unfair and deceptive business practices, as alleged above and herein:

   (a)     Defendants violated Cal. Civ. Code § 1770(a)(5) by representing that the Coffee Products have characteristics that they do not have.

   (b)     Defendants violated Cal. Civ. Code § 1770(a)(9) by advertising the Coffee Products with the intent not to sell them as advertised.

42.     The CLRA was enacted to protect consumers against such practices.  The CLRA applies to Defendants' conduct because the statute covers all sales of goods to consumers.

43.     Plaintiff Diamond and other Members of the California Subclass are "consumers" within the meaning of Cal. Civ. Code § 1761(d).  By purchasing Defendants' Beaumont Coffee Products, Plaintiff Diamond and other Members of the California Subclass engaged in "transactions" within the meaning of Cal. Civ. Code §§ 1761(e) and 1770.

44.     Defendants are "persons" within the meaning of Cal. Civ. Code § 1761(c). Defendants' Coffee Products are "goods" within the meaning of Cal. Civ. Code § 1761(a).

45.     Defendants' unfair and deceptive business practices, as alleged above and herein, were intended to and did result in the sale of the Coffee Products.

46.     As a direct and proximate result of Defendants' unfair and deceptive business practices, as alleged above and herein, Plaintiff Diamond and other Members of the California Subclass suffered injury and damages in an amount to be determined at trial.

47.     On information and belief, Defendants' unfair and deceptive business practices, as alleged above and herein, were willful, wanton, and fraudulent.

48.     On information and belief, Defendants' officers, directors, and/or managing agents authorized the use of the false and misleading statements and material omissions regarding the serving yield of Defendants' Coffee Products, as alleged above and herein.

49.     On October 30, 2020, prior to the filing of this Complaint, Plaintiffs' counsel sent Defendants a CLRA notice letter, which complies in all respects with California Civil Code §1782(a).  The letter also provided notice of breach of express and implied warranties.  The letter was sent via certified mail, return receipt requested, advising Defendants that they were in violation of the CLRA and demanding that they cease and desist from such violations and make full restitution by refunding the monies received therefrom.  The letter stated that it was sent on behalf of Plaintiffs and all other similarly situated purchasers.

50.     Plaintiff Diamond and the California Subclass Members seek to enjoin the unlawful acts and practices described herein.

## COUNT II
### Violation Of Unfair Competition Law,
### Cal. Bus. & Prof. Code § 17200, *et seq.*
### (On Behalf Of The California Subclass)

51.     Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

52.     Plaintiff Loretta Diamond brings this claim individually and on behalf of the Members of the proposed California Subclass against Defendants.

53.     Defendants violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210, by engaging in unfair, fraudulent, and unlawful business practices.

54.     Plaintiff Diamond has standing to pursue this claim because she has suffered an injury-in-fact and has lost money or property as a result of Defendants' unlawful, unfair, and fraudulent conduct.  Specifically, Plaintiff Diamond purchased a Beaumont Coffee Product for her own personal consumption.  In doing so, Plaintiff Diamond relied upon Defendants' false representations that the Coffee Product would produce more servings of coffee than it actually did.  Plaintiff Diamond spent money in the transaction that she otherwise would not have spent had she known the truth about Defendants' advertising claims.

### *"Unfair" Prong of the UCL*

55.     A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.  That unfairness is determined by weighing the reasons, justifications, and motives for the business act or practice against the gravity of the harm to the alleged victims.

56.     Defendants' conduct constitutes an "unfair" business practice because, as alleged herein, Defendants have engaged, and continue to engage, in a false, misleading, and deceptive advertising campaign that misleads consumers into believing that the Coffee Products they purchase will yield a greater number of servings than each cannister actually contains.

57.     Defendants' conduct, as alleged above and herein, was not motivated by any legitimate business or economic need or rationale, other than to maximize their profits at the expense of consumers.  No legitimate reasons, justifications, or motives outweigh the harm and adverse impact of Defendants' conduct on members of the general consuming public. Defendants engaged, and continues to engage, in such conduct solely to wrongfully extract monies from consumers, including Plaintiff Diamond, to which Defendants are not entitled. Defendants could have, but has not, used alternate means of effecting their legitimate business needs, such as by properly disclosing (1) how many servings of coffee each Coffee Product

16

produces, and/or (2) that the Coffee Products produce fewer than the "MAKES UP TO ___

CUPS" number of servings advertised on the front label.

58.     Defendants' conduct harms consumers and hurts market competition.

Defendants' conduct, as alleged herein, is immoral, unethical, oppressive, unscrupulous,

unconscionable, and/or substantially injurious to Plaintiff Diamond and Members of the

California Subclass because it violates consumers' reasonable expectations.  If Defendants have

advertised their Coffee Products in a non-misleading fashion, Plaintiff and other California

Subclass Members could have considered other options for purchasing coffee grounds.

### *"Fraudulent" Prong of the UCL*

59.     A business act or practice is "fraudulent" under the UCL if it is likely to deceive

members of the consuming public.

60.     Defendants have engaged, and continues to engage, in a "fraudulent" business

practice by knowingly representing to consumers that the Coffee Products they purchase will

yield a greater number of servings than they actually do.  Defendants' conduct deceived Plaintiff

Diamond and other California Subclass Members who purchased the Coffee Products in reliance

on the advertised serving yield, and it is highly likely to deceive members of the consuming

public because, as alleged above, it violates consumers' reasonable expectations regarding

serving yield.  Such a business practice lacks utility and functions only to maximize Defendants'

profits at the expense of their customers.  The gravity of the harm to Plaintiff Diamond and other

California Subclass Members, who lost money or property by paying for the Coffee Products, far

outweighs any benefit of Defendants' conduct.

61. Further, Defendants' fraudulent business practice will continue to mislead consumers because it will be impossible for consumers to know whether Defendants have stopped misrepresenting the serving yield of their Coffee Products until *after* consumers purchase such products. Accordingly, the risk of harm to Plaintiff Diamond, Members of the California Subclass, and the consuming public is ongoing.

### *"Unlawful" Prong of the UCL*

62. A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

63. Defendants' business practices, as alleged herein, constitute violations of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* (the "CLRA"). Specifically, Defendants have unlawfully marketed and advertised their Beaumont Coffee Products in violation of Cal. Civ. Code §§ 1770(a)(5) and 1770(a)(9), as detailed below.

64. Defendants' business practices also constitute violations of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.* (the "FAL"), as detailed below.

65. Defendants' unfair, fraudulent, and unlawful business practices, as enumerated and explained above, were the direct and proximate cause of financial injury to Plaintiff Diamond and other Members of the California Subclass. Defendants have unjustly benefitted as a result of their wrongful conduct. Accordingly, Plaintiff Diamond and the California Subclass seek an order of this Court that includes, but is not limited to, requiring Defendants to: (a) provide restitution to Plaintiff and other California Subclass Members; (b) disgorge all revenues obtained as a result of their violations of the UCL; (c) pay attorneys' fees and costs for Plaintiff and the California Subclass.

<u>COUNT III</u>
**Violation Of False Advertising Law,
Cal. Bus. & Prof. Code § 17500, *et seq.*
(On Behalf Of The California Subclass)**

66.      Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

67.      Plaintiff Loretta Diamond brings this claim individually and on behalf of the Members of the proposed California Subclass against Defendants.

68.      Defendants violated California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 by publicly disseminating false, misleading, and/or unsubstantiated advertisements regarding their Beaumont Coffee Products as alleged above and herein.

69.      Plaintiff Diamond has standing to pursue this claim because she has suffered an injury-in-fact and has lost money or property as a result of Defendants' false advertising. Specifically, Plaintiff Diamond purchased a Beaumont Coffee Product for her own personal consumption.  In doing so, Plaintiff Diamond relied upon Defendants' false, and misleading representations that the Coffee Product would produce more servings of coffee than it actually did.  Plaintiff Diamond spent money in the transaction that she otherwise would not have spent had she known the truth about Defendants' advertising claims.

70.      Defendants disseminated false and misleading advertisements to increase the sales of their Beaumont Coffee Products.

71.      Defendants knew or should have known that the advertisements for their Beaumont Coffee Products were false and/or misleading.

72.      Defendants knew or should have known that consumers, including Plaintiff Diamond and other Members of the California Subclass, would believe that the Coffee Products would produce the number of servings prominently advertised on their front labels.

73.    Plaintiff Diamond and Members of the California Subclass have suffered harm as a result of Defendants' violations of the FAL because they paid monies for the Coffee Products that they would not have paid but for Defendants' false and misleading advertisements.

74.    Accordingly, Plaintiff Diamond and Members of the California Subclass seek an order of this Court that includes, but is not limited to, requiring Defendants to: (a) provide restitution to Plaintiff and other California Subclass Members;  (b) disgorge all revenues obtained as a result of their violations of the FAL; (c) pay attorneys' fees and costs for Plaintiff and the California Subclass.

### COUNT IV
**Deceptive Acts Or Practices,
Violation Of New York Gen. Bus. Law § 349
(On Behalf Of The New York Subclass)**

75.    Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

76.    Plaintiff Eileen Brodsky brings this claim individually and on behalf of the Members of the proposed New York Subclass against Defendants.

77.    Defendants committed deceptive acts and practices by employing false, misleading, and deceptive representations and/or omissions about the serving yield of their Coffee Products to mislead consumers into believing the Coffee Products they purchase will yield a greater number of servings than each cannister actually contains.

78.     Plaintiff Brodsky has standing to pursue this claim because she has suffered an injury-in-fact and has lost money or property as a result of Defendants' deceptive acts and practices.  Specifically, Plaintiff Brodsky purchased a Coffee Product for her own personal consumption.  In doing so, Plaintiff Brodsky relied upon Defendants' false, misleading, and deceptive representations that the Coffee Product would produce more servings of coffee than it actually did.  Plaintiff Brodsky spent money in the transaction that she otherwise would not have spent had she known the truth about Defendants' advertising claims.

79.     Defendants' deceptive acts and practices were directed at consumers.

80.     Defendants' deceptive acts and practices are misleading in a material way because they violate consumers' reasonable expectations.  Defendants knew consumers would purchase Coffee Products and/or pay more for them under the false – but reasonable – belief that each cannister would produce more servings than it actually does.  By advertising so prominently that the Coffee Products yield more servings than they actually do, Defendants prove that information about serving yield is material to consumers.  If such information were not material, Defendants would not feature it in capital letters on the front label of every Coffee Product cannister.  As a result of their deceptive acts and practices, Defendants have sold thousands, if not millions, of Coffee Products to unsuspecting consumers across New York.  If Defendants had advertised their Coffee Products truthfully and in a non-misleading fashion, Plaintiff and other New York Subclass Members would not have purchased them or would not have paid as much as they did for them.

81.     As a direct and proximate result of Defendants' false, misleading, and deceptive representations and/or omissions, Plaintiff Brodsky and other Members of the New York Subclass were injured in that they: (1) paid money for Coffee Products that were not what Defendants represented; (2) were deprived of the benefit of the bargain because the Coffee

Products they purchased were different than Defendants advertised; and (3) were deprived of the benefit of the bargain because the Coffee Products they purchased had less value than Defendants represented.

82.     On behalf of herself and Members of the New York Subclass, Plaintiff Brodsky seeks to enjoin Defendants' unlawful acts and practices and recover her actual damages or fifty (50) dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT V
### False Advertising,
### Violation Of New York Gen. Bus. Law § 350
### (On Behalf Of The New York Subclass)

83.     Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

84.     Plaintiff Eileen Brodsky brings this claim individually and on behalf of the Members of the proposed New York Subclass against Defendants.

85.     Defendants engaged in a campaign of false advertising with regard to the serving yield of their Coffee Products to mislead consumers into believing the Coffee Products they purchase will yield a greater number of servings than each cannister actually contains.

86.     Plaintiff Brodsky has standing to pursue this claim because she has suffered an injury-in-fact and has lost money or property as a result of Defendants' deceptive acts and practices.  Specifically, Plaintiff Brodsky purchased a Coffee Product for her own personal consumption.  In doing so, Plaintiff Brodsky relied upon Defendants' false, misleading, and deceptive representations that the Coffee Product would produce more servings of coffee than it actually did.  Plaintiff Brodsky spent money in the transaction that she otherwise would not have spent had she known the truth about Defendants' advertising claims.

87.     Defendants' deceptive acts and practices were directed at consumers.

88.     Defendants' deceptive acts and practices are misleading in a material way because, as alleged above and herein, they violate consumers' reasonable expectations.  If Defendants had advertised their Coffee Products truthfully and in a non-misleading fashion, Plaintiff and other New York Subclass Members would not have purchased the Coffee Products or would not have paid as much as they did for them.

89.     As a direct and proximate result of Defendants' false, misleading, and deceptive representations and omissions, Plaintiff Brodsky and other Members of the New York Subclass were injured in that they: (1) paid money for Coffee Products that were not what Defendants represented; (2) were deprived of the benefit of the bargain because the Coffee Products they purchased were different than Defendants advertised; and (3) were deprived of the benefit of the bargain because the Coffee Products they purchased had less value than Defendants represented.

90.     On behalf of herself and Members of the New York Subclass, Plaintiff Brodsky seeks to enjoin Defendants' unlawful acts and practices and recover her actual damages or five hundred (500) dollars per violation, whichever is greater, three times actual damages, and reasonable attorneys' fees.

**<u>COUNT VI</u>**
**Breach of Express Warranty**
**(On Behalf Of The Class, The California Subclass, And The New York Subclass)**

91.     Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

92.     Plaintiffs Eileen Brodsky and Rhonda Diamond bring this claim individually and on behalf of the Members of the proposed Class and Subclasses against Defendants.

93.     As the designer, manufacturer, marketer, distributor, and/or seller of Beaumont Products, Defendants issued an express warranty by representing to consumers at the point of purchase that each Coffee Product would yield a certain number of servings of coffee.

Defendants' representations were part of the description of the goods and the bargain upon which the goods were offered for sale and purchased by Plaintiffs and Members of the Class and Subclasses.

94.     In fact, the Coffee Products do not conform to Defendants' representations about serving yield.  Each Coffee Product produces fewer servings of coffee than what Defendants represent.  By falsely representing the Coffee Products in this way, Defendants breached express warranties.

95.     As a direct and proximate result of Defendants' breach, Plaintiffs and Members of the Class and Subclasses were injured because they: (1) paid money for Coffee Products that were not what Defendants represented; (2) were deprived of the benefit of the bargain because the Coffee Products they purchased were different than Defendants advertised; and (3) were deprived of the benefit of the bargain because the Coffee Products they purchased had less value than Defendants represented.  Had Defendants not breached the express warranty by making the false representations alleged herein, Plaintiffs and Class and Subclass Members would not have purchased the Coffee Products or would not have paid as much as they did for them.

## COUNT VII
### Breach of Implied Warranty
**(On Behalf Of The Class, The California Subclass, And The New York Subclass)**

96.     Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

97.     Plaintiffs Eileen Brodsky and Rhonda Diamond bring this claim individually and on behalf of the Members of the proposed Class and Subclasses against Defendants.

98.     Defendants routinely engages in the manufacture, distribution, and/or sale of Beaumont Coffee Products and is a merchant that deals in such goods or otherwise holds themselves out as having knowledge or skill particular to the practices and goods involved.

99.     Plaintiffs and Members of the Class and Subclasses were consumers who purchased Defendants' Coffee Products for the ordinary purpose of such products.

100.     By representing that the Coffee Products would produce a certain number of servings, Defendants impliedly warranted to consumers that the Coffee Products were merchantable, such that they were of the same average grade, quality, and value as similar goods sold under similar circumstances.

101.     However, the Coffee Products were not of the same average grade, quality, and value as similar goods sold under similar circumstances.  Thus, they were not merchantable and, as such, would not pass without objection in the trade or industry under the contract description.

102.     As a direct and proximate result of Defendants' breach, Plaintiffs and Members of the Class and Subclasses were injured because they paid money for Coffee Products that would not pass without objection in the trade or industry under the contract description.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, seek judgment against Defendants as follows:

a.  Certifying the nationwide Class, the New York Subclass, and the California Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and respective Subclasses and Plaintiffs' attorneys as Class Counsel to represent the Class and Subclass Members;

b.  Declaring that Defendants' conduct violates the statutes referenced herein;

c.  Finding in favor of Plaintiffs, the nationwide Class, the New York Subclass, and the California Subclass against Defendants on all counts asserted herein;

d.  Ordering Defendants to disgorge and make restitution of all monies Defendants acquired by means of the unlawful practices as set forth herein;

e.  Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendants from continuing the unlawful practices as set forth herein, and directing Defendants to identify, with Court supervision, victims of their conduct and pay them all the money they are required to pay;

f.  Awarding Plaintiffs and Class and Subclass Members their costs and expenses incurred in the action, including reasonable attorneys' fees;

g.  Ordering Defendants to pay pre-judgment interest on all amounts awarded;

h.  Providing such further relief as may be just and proper.

## JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.


Dated:  December 21, 2020                    Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:  ____/s/ L. Timothy Fisher____
          L. Timothy Fisher

L. Timothy Fisher
Brittany S. Scott*
1990 N. California Blvd., Suite 940
Walnut Creek, CA 94596
Tel:  (925) 300-4455
Fax: (925) 407-2700
Email: ltfisher@bursor.com
          bscott@bursor.com

*Pro Hac Vice Forthcoming*

*Attorneys for Plaintiff*

## **CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, L. Timothy Fisher declare as follows:

1.      I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court.  I am a partner at Bursor & Fisher, P.A., counsel of record for Plaintiffs in this action.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2.      The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the Northern District of Illinois.

I declare under the penalty of perjury under the laws of the State of California  and the United States that the foregoing is true and correct and that this declaration was executed at Walnut Creek, California this 21st day of December, 2020.

_/s/ L. Timothy Fisher_ _

L. Timothy Fisher
