UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EILEEN BRODSKY and RHONDA DIAMOND, individually and on behalf of all others similarly situated,<br>          Plaintiffs,<br><br>    v.<br><br>ALDI INC., COFFEE HOLDING COMPANY, INC., and PAN AMERICAN COFFEE CO. LLC,<br>          Defendants. | Case No. 1:20-cv-07632<br><br>Hon. Robert W. Gettleman<br><br>Hon. M. David Weisman |

**COFFEE HOLDING COMPANY, INC.'S MOTION
TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

## INTRODUCTION

Two consumers brought this putative nationwide false advertising class action against Aldi Inc. (Aldi), a supermarket chain, and two of its private label "Beaumont" brand coffee roasters, Coffee Holding Company, Inc. (Coffee Holding), and Pan American Coffee US, LLC (Pan American) claiming that it is deceptive to use "makes up to ___ cups" language on a coffee cannister label. According to Plaintiffs, because they could not make the most possible cups listed to their taste, the label constitutes actionable false advertising. In other words, Plaintiffs claim that statements that it is possible to make "up to" a number of cups from a given container based on a customer's unique taste is actually a guaranteed minimum of cups that every customer can make regardless of their personal preferences – despite, among other things, language on the label saying that more or less coffee should be used to get the customer's individual desired strength.

1

On their face, Plaintiffs' claims reflect a blatant misreading of the product labels – they simply read the words "up to" out of existence. Plaintiffs instead extrapolate the suggested one tablespoon per cup of coffee ratio used for a single serving and conclude that no reasonable consumer could make the most cups indicated on the label. Aside from redefining "up to" as a floor rather than a ceiling, Plaintiffs also ignore the recommended "for best results" brewing instructions to use a lesser ratio of coffee grounds to water as the desired cup yield increases. Plaintiffs further overlook the labels' brewing instructions to "[u]se more or less coffee to get desired strength" – including using less that the 1:1 ratio for even a single cup.

While some consumers may want to brew a stronger cup of coffee, others may desire a weaker cup and use substantially fewer grounds to suit their taste. It is axiomatic that no two people like their coffee exactly the same way. That is why, for example, coffee shops and homeowners alike have a literal buffet of milk (2%, whole, skim, almond, and soy), creamers (half and half, flavored creamers), and sweeteners (sugar and numerous brands of sweeteners) available for each person to make it their own taste. Plaintiffs' entire putative class action complaint assumes that reasonable consumers all like their coffee, the same way, at the same strength, brewed one cup at a time. That is nonsense.

In response to the defendants' initial motions to dismiss, Plaintiffs chose to file a first amended complaint. Plaintiffs' second attempt at stating a cause of action fares no better than the first. Coffee Holding now moves to dismiss the First Amended Class Action Complaint ("Amended Complaint") because Plaintiffs lack standing and fail to state a claim. The Amended Complaint should be dismissed for numerous reasons. For example, Plaintiffs lack standing because they suffered no concrete and particularized injury. Both received what they bargained for—the amount of ground coffee advertised by the net weight on the label (and even if Plaintiffs

2

had not received what was promised, they could easily avoid any future issue by not buying Beaumont coffee). Next, Plaintiffs fail to state a claim because the labels are not deceptive, misleading, or fraudulent. Further, Plaintiffs fail to allege facts establishing that they were denied a refund or credit for their purchases. Finally, Plaintiffs' tortured reading of the label is not one that can be attributed to reasonable consumers.

I.       **The Putative Class Plaintiffs**

Plaintiffs Eileen Brodsky and Rhoda Diamond bought Beaumont coffee from Aldi grocery stores in their home states of New York and California. (First Amended Class Action Complaint (FACAC) [EFC #23], ¶¶4, 12-13.) Brodsky alleges that she bought a 22.4-ounce cannister of Beaumont 100% **Colombian** Ground Coffee with a label that the cannister "makes up to" **210** six-ounce cups of coffee. (*Id*. ¶ 12)(emphasis added). Diamond alleges that she bought a 22.4-ounce cannister of Beaumont **Classic** Roast with a label that the cannister "makes up to" **210** six-ounce cups of coffee. (*Id*. ¶ 14)(emphasis added). Plaintiffs' table, however, asserts that **Classic** Roast advertises that it makes up to **240** cups and the **Columbian** Roast makes up to **210** cups. (*Id*. ¶ 7)(emphasis added). Plaintiffs' table also alleges that Beaumont's 320 kg [sic.] "Decaf" advertises that it makes up to 90 cups, however, Plaintiffs do not allege that they purchased Beaumont's Decaffeinated Coffee. Thus, it is still unclear which coffee product(s) are at issue.

Plaintiffs' claims are nevertheless based on the false premise that "Makes up to __ Cups" means that the cannister guarantees a yield of that number of cups. (*Id*. ¶ 20.) Plaintiffs thus claim that the labels are false and misleading because they could not make 210 six-ounce cups of coffee when making them one serving at a time. (*Id*. ¶ 4.) Such a claims defy common sense, fail to acknowledge that "up to" is a common qualifying term and not a guaranteed minimum, and fail to apply the labels' instructions.

3

Plaintiffs allege that the Beaumont labeling is "false and misleading and omits material information" and "violate[s] consumers' reasonable expectations" based on a static 1:1 ratio. (*Id.* ¶¶ 20, 22-24.) Plaintiffs allege they "relied to their detriment" on defendants' representations and suffered "monetary damages" because they would not have purchased the coffee products, or would have paid less, had they "known the truth" about the serving yields. (*Id.* ¶¶ 8, 14, 26.) Thus, Plaintiffs claim they were deprived of the "benefit of the bargain" when they bought Beaumont coffee from Aldi. (*Id.* ¶¶ 25-26.)

Plaintiffs also seek to certify a nationwide class, and New York and California subclasses, of Beaumont consumers "who have not received a refund or credit for their purchase(s)" despite failing to allege facts establishing that Plaintiffs asked for a refund or credit for their purchases and were denied the same. (*Id.* ¶¶ 28-30.) Alleging violations of various consumer protection statutes, Plaintiffs seek restitution, statutory penalties, costs, and attorneys' fees. They also seek injunctive relief because, although they "greatly enjoy Beaumont coffee," they supposedly cannot trust that they will not "again, by mistake" purchase Beaumont coffee with a similar label. (*Id.* ¶¶ 15-16, 21; Prayer for Relief.)

## II. <u>The Beaumont Coffee Label</u>

Plaintiffs provide only a partial image of the allegedly deceptive product label. (*Id*. ¶ 5.) Even there, however, it is plain to see that Plaintiffs' allegation that the "front label prominently and conspicuously states the number of six-fluid-ounce servings of coffee the cannister will produce" is demonstrably false – nowhere on the label is such a guarantee made. (*Id*.)

The full label on each can of Beaumont coffee contains five relevant elements.[1]

---

[1] Coffee Holding requests that this Court take judicial notice of the complete label to which the Complaint refers and is central to Plaintiffs' claims. *See Hecker v. Deere & Co.,* 556 F.3d 575, 582 (7th Cir. 2009).



First, the amount of coffee is represented in the "Net Weight" of the contents of the cannister, and is provided in ounces, pounds, and grams. Second, the "Brewing Instructions" direct the consumer to "[f]ill coffee pot to desired level." They recommend using "for best results" "1 Tbsp" of ground coffee to make "1 Serving (6 fl. oz)" of water. The brewing instructions also contain two additional, convenient measurements for other servings: ½ cup of coffee (eight tablespoons) [2] to make 10 servings and 1 ½ cups of coffee (24 tablespoons) to make 30 servings. Third, in recognizing the many ways consumers brew and enjoy their coffee, the label advises "[u]se more or less coffee to get desired strength." Fourth, the "Makes Up To" statement provides the cannister's potential yield. Last, the Aldi guarantees that, if a customer is dissatisfied, Aldi will replace the product and refund their money. The Complaint lacks any allegation that Plaintiffs availed themselves of this remedy.

Significantly, the label does <u>not</u> state that: (1) a tablespoon is recommended for making any quantity of coffee above a single serving; (2) the cannister's potential yield is based on

---

[2] Coffee Holding requests that the Court take judicial notice of the conversion of cups to tablespoons. *See* U.S. DEP'T OF COM., *National Institute of Standards and Technology,* Metric Cooking Resources, https://www.nist.gov/pml/weights-and-measures/metric-cooking-resources, (last visited March 29, 2021).

tablespoons of ground coffee; or (3) the cannister's weight and yield are formulaically related. In fact, the instructions clearly state that the purchaser should use less coffee grounds during higher yield brewing, and only a decontextualized, unreasonable reading of the label would allow a conclusion that the upper limit of the yield could be achieved by making single portions of coffee one tablespoon at a time.

## ARGUMENT

I. **PLAINTIFFS LACK STANDING**

Plaintiffs' Complaint should be dismissed under FRCP Rule 12(b)(1) because they fail to show a justiciable controversy that satisfies Article III's standing requirement. *See Whitmore v. Arkansas*, 495 U.S. 149, 155-56 (1990) (to meet their burden, Plaintiffs' complaint "must clearly and specifically set forth facts sufficient to satisfy [the] Article III standing requirement.") Specifically, Plaintiffs fail to allege facts showing "(1) an injury-in-fact; (2) fairly traceable to the defendant's action; and (3) capable of being redressed by a favorable decision from the court." *Parvati Corp. v. City of Oak Forest, Ill.*, 630 F.3d 512, 516 (7th Cir. 2010) (citations omitted). The allegations that the labels are misleading based on a subjective measure of product yield by preparing one serving at a time fails to show an injury that is "both (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical" (*id.* at 516) for the reasons below.

A. **Plaintiffs lack standing to pursue claims for products not purchased.**

Plaintiffs assert claims against a group of three products: (1) Classic Roast, (2) 100% Colombian Roast, and (3) Decaffeinated Coffee. (FACAC ¶ 5.) Which products Plaintiffs bought, however, is not clear. First, Plaintiffs allege that Brodsky bought "100% Colombian Ground Coffee" making up to 210 cups. (*Id.* ¶ 12.) Then, Plaintiffs allege that Diamond bought "Beaumont Classic Roast" making "up to 210" cups. (*Id.* ¶ 13.) Paragraph 7 of the Amended Complaint, however, asserts that Classic Roast makes up to 240 cups, and Columbian makes up

to 210 cups – so it is not clear which type of coffee Diamond allegedly purchased. Nowhere do Plaintiffs allege that they bought Beaumont Decaffeinated Coffee.

Plaintiffs have the burden to adequately plead, and they do not have standing to pursue claims for products they did not purchase. *See Cowen v. Lenny & Larry's Inc.,* 2017 WL 45772201, at *3 (N.D. Ill. Oct. 12, 2017) (dismissing claims for products plaintiffs did not purchase in false advertising suit because the injury-in-fact element of standing cannot be satisfied). Neither the Court nor the Defendants should have to guess which products Plaintiffs purchased. Because Plaintiffs filed their Amended Complaint as a putative class action, they cannot slip in more products to "piggyback" on the purported injuries of unnamed plaintiffs. *See Payton v. Cnty. of Kane*, 308 F.3d 673, 682 (7th Cir. 2002).

**B.    Plaintiffs lack standing because they did not suffer a concrete and particularized injury-in-fact.**

Plaintiffs claim that they received "less than the advertised amount of coffee they believe[d] they [were] purchasing" (FACAC ¶¶ 3, 8, 14) and were deprived of the "benefit of their bargain" (*id*. ¶ 25). Those allegations are, however, unsupported. The net weight is listed on the label and there is no allegation that the product bought did not contain that amount of coffee, or that the advertised product weight is false or deceptive. Instead, Plaintiffs base their allegations on the number of cups of coffee they claim they could yield from the product—a subjective measure with endless hypothetical scenarios.

The Beaumont coffee labels are clear and accurate. For example, the label on the 24.2-ounce cannister of 100% Colombian Roast states that it "MAKES *UP TO* 210 6 OZ CUPS." (FACAC ¶ 5) (emphasis added). The common sense meaning of that statement is that 210 is the upper, not lower, limit of six-ounce cups that are possible. Otherwise, the label should state, "MAKES 210 6 OZ CUPS" or "MAKES AT LEAST 210 6 OZ CUPS."

7

Notably, Plaintiffs do not allege that it is impossible to make 210 six-ounce cups of coffee with the 24.2-ounce cannister. Instead, they claim that it is impossible to make 210 six-ounce cups by making them one serving at a time—*something that is not promised or advertised*. Plaintiffs do not deny that it may be possible to reach the advertised number of cups by preparing multiple servings at a time, or using "less coffee to get desired strength," instructions for which are on the labels. Rather, Plaintiffs rely on one possible formula that results in their disappointment while ignoring other possibilities that may have met their satisfaction. That Plaintiffs could not reach a particular result by following one subjective methodology that is not promised or guaranteed "is just a regret or disappointment[,]" and is not "an invasion of a legally protected" required for standing. *Eike v. Allergan, Inc.*, 850 F.3d 315, 318 (7th Cir. 2017) (quotation omitted).

  **C.** **Plaintiffs lack standing because they did not avail themselves of an available remedy.**

"Once the defendant offers to satisfy the plaintiff's entire demand, there is no dispute over which to litigate, and a plaintiff who refuses to acknowledge this loses outright under Fed. R. Civ. P. 12(b)(1), because he has no remaining stake." *Holstein v. City of Chicago*, 29 F.3d 1145, 1147 (7th Cir. 1994).[3] That is the case here. Aldi prominently offers a guarantee under which Plaintiffs could have received a product replacement *and* full refund. This would have negated Plaintiffs' subjective overpayment and given them the benefit of their bargain. Rather than accept that adequate remedy, they sued. As such, they lack standing. *See Strama v. Toyota Motor Sales, USA, Inc.*, No. 15 C 9927, 2016 WL 561936, at *3 (N.D. Ill. Feb. 12, 2016) (holding plaintiff's failure to seek repair and reimbursement was fatal to their standing).

---

[3] *Holstein* quotes *Rand v. Monsanto Co.*, 926 F.2d 596, 598 (7th Cir. 1991), later overturned in *Chapman v. First Index, Inc.*, 796 F.3d 783, 787 (7th 2015) on the grounds that a plaintiff's failure to accept an offer of judgment under FRCP Rule 68(d) does not moot the litigation. Here, Plaintiffs had an adequate remedy available to them before they filed suit, advertised on the very label at issue, but chose to file suit instead.

### D. Plaintiffs lack standing because they failed to allege actual reliance.

Each of Plaintiffs' consumer protection claims require actual reliance on the allegedly deceptive business practice to qualify for standing to sue. *In re Ferraro Litigation*, 794 F. Supp. 2d 1107, 1111-12 (S.D. Cal. 20011) ("[A]ctual reliance is required to have standing to sue under the UCL or FAL…. In addition, actual reliance is required to have standing to sue under the CLRA."). And the alleged misrepresentation must have been "an immediate cause of the plaintiff's injury-producing conduct." *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009).

Plaintiffs lack actual reliance because they rely on a statement that was never made. Plaintiffs claim that they "relied to their detriment on Defendants' representations regarding the number of servings each Coffee Product would yield" based on "the front label prominently and conspicuously stat[ing] the number of six-fluid-ounce servings of coffee the cannister will produce." (FACAC ¶¶ 5, 8.) But any reliance is proven false by Plaintiffs' own depiction of the label. (*Id*.) Beaumont coffee labels do not guarantee that the cannisters *will* yield a certain number of servings—especially not when preparing one serving at a time. No reasonable consumer would rely on a statement with the qualifier "up to" for the meaning that Plaintiffs ascribe.

Plaintiffs further fail to adequately allege that they relied on the labels' "makes up to" language in purchasing the Beaumont coffee over some other brand of coffee that that advertised a different yield based on the same amount of coffee.

### E. Plaintiffs lack standing for injunctive relief because future injury is unlikely.

To qualify for prospective injunctive relief, "a plaintiff must allege a real and immediate threat of future violations of their rights." *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013) (quotation omitted). Plaintiffs strain to allege a possibility of future harm. They claim that they "are susceptible to … reoccurring harm" because they want to keep purchasing coffee products but are unsure whether Defendants have "corrected this deceptive and false advertising

9

scheme." (FACAC ¶ 15.) Plaintiffs also claim they "may again, by mistake, purchase a falsely-advertised product from Defendants under the mistaken impression" that defendants have corrected the label. (*Id*. ¶16.) These allegations defy common sense.

Here, there is no credible threat of future harm because Plaintiffs are aware of the supposedly deceptive label. *See Camasta v. Jos. A. Bank Clothiers Inc*., 761 F.3d 732, 741 (7th Cir. 2014) ("Since Camasta is now aware of JAB's sales practices, he is not likely to be harmed by the practices in the future."); *see also Geske v. PNY Technologies, Inc.*, 2020 WL 7042887, at *10 (N.D. Ill. Nov. 30, 2020) ("Once a plaintiff knows that a product is deficient, he or she is unlikely to purchase it again, and therefore unlikely to sustain future harm. A 'fool me once' plaintiff does not need an injunction if he or she is not going to buy the product again anyways. There is no risk of 'fool me twice,' so there is no basis for an injunction.") Thus, the Court should dismiss Plaintiffs' request for injunctive relief for lack of standing.

## II. THE COMPLAINT FAILS TO STATE A CLAIM

Plaintiffs' Complaint should be dismissed pursuant to FRCP Rule 12(b)(6) because it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Broadly speaking, Plaintiffs' conclusions that Beaumont coffee labels are false, misleading, and deceptive are inadequate because the federal pleading standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. Moreover, Plaintiffs' single-serving theory fails to deliver a plausible explanation of why or how their purported "injuries" were not caused by "obvious alternative explanations." *Id*. at 567. In addition, Plaintiffs' consumer protection claims for fraudulent conduct must satisfy FRCP Rule 9(b)'s heightened pleading standard. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).

### A. Plaintiffs' fail to plead non-conclusory allegations that Coffee Holding acted in concert with Pan American and Aldi.

Plaintiffs underlying basis for liability as to Coffee Holding is based on the bare allegation that "Coffee Holdings, in concert with Aldi and Pan American, developed the Coffee Products during the class period." (FACAC ¶ 19.) The Court should dismiss the Complaint against Coffee Holding because Plaintiffs' conclusory allegation fails to allege fact establishing how Coffee Holding acted in concert with, or provided substantial assistance to, Pan American and Aldi. *See Hutchinson v. Fitzgerald Equip. Co., Inc.*, 910 F.3d 1016, 1025-26 (7th Cir. 2018) (affirming dismissal of a complaint against a defendant because the nonconclusory factual allegations failed to establish a plausible inference that the defendant acted in concert). Putting aside the seemingly absurd notion that competitors for Aldi's business, Coffee Holding and Pan American, would join forces and collaborate on a label design, who exactly acted in concert with whom? To do what? When? A bare conclusory allegation that such concerted action took place is insufficient. Pursuant to *Twombly*, a plaintiff may not merely allege conduct that is conceivable, but must allege facts making the claim plausible on its face. *Twombly*, 550 U.S. at 570.

### B. Plaintiffs' allegations do not establish a violation of California or New York consumer protection laws (Counts I, II, III, IV, and V).

California's consumer protection laws prohibit "unlawful, unfair, or fraudulent business practices." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (citing Cal. Bus. & Prof. Code §§ 17200, 17500, and Cal Civ. Code § 1770). Despite their differences, the UCL, CLRA, and FAL are all governed by the "reasonable consumer" test, which requires a plaintiff to "show that members of the public are likely to be deceived" by the challenged conduct. *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (quotation omitted). This requires "more than a mere possibility that [a defendant's label] might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Ebner*, 838 F.3d at 965 (quotation omitted). Instead, "the

11

reasonable consumer standard requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* (quotation omitted).

Like California's consumer protection laws, New York's consumer protection laws prohibit "[d]eceptive acts or practices" and "false advertising" in the conduct of business, trade, or commerce. GBL §§ 349, 350. And like California courts, New York courts have adopted a reasonable consumer test for such claims. *See, e.g.*, *Jessani v. Monini N. Am., Inc.*, 744 F. App'x. 18, 19 (2d Cir. 2018). Thus, "to survive a motion to dismiss, plaintiff must allege statements that were 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Davis v. Hain Celestial Grp., Inc.*, 297 F. Supp. 3d 327, 334 (E.D.N.Y. 2018) (quotation omitted). And "[i]t is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (citations omitted).

### 1. The Beaumont labels are neither untrue nor misleading.

Each of Plaintiffs' claims fail because Defendants' labels are neither untrue nor misleading. *First*, the labels state that each cannister of coffee may produce "up to" a certain number of cups. Courts have repeatedly affirmed that "up to" is a qualifier that would not deceive a reasonable consumer. *See Maloney v. Verizon Internet Servs., Inc.*, 413 F. App'x 997, 999-1000 (9th Cir. 2011) (affirming dismissal of a UCL claim and holding "[a] reasonable consumer would not have been deceived … the qualifier 'up to' (meaning the same or less than) …."); *see also Knowles v. Arris Int'l PLC*, 2019 WL 3934781, at *14 (N.D. Cal. Aug. 20, 2019) ("Arris's statements … include the qualifier 'up to,' s[o] [] no reasonable consumer would believe that Arris guarantees gigabit download speeds and 32 download channels."); *Fink,* 837 F. Supp. 2d at 283-84 (the "qualifi[cation] by the phrase 'up to[]' … would lead a reasonable consumer to expect that speeds

could be less than [ ] advertised"); *Faistl v. Energy Plus Holdings, LLC*, 2012 WL 3835815, at **4-5 (D.N.J. Sept. 4, 2012) (dismissing fraud claim because the plaintiff failed "to allege any particular statement made by Defendant that was, in fact, false," and explaining that the phrase "'save up to 10[%]' does not, without more, guarantee any particular percentage of savings").

*Second*, the labels do not advertise or promise that the maximum yield will be achievable by following the instructions to produce a single serving at a time. The labels describe various factors that may affect the yield, including the number of servings made at a time and the desired strength of each serving. It is clear on the labels that a 1:1 ratio is not an accurate formula to measure product volume because the instructions to prepare 10 servings calls for only a half-cup of coffee—roughly eight tablespoons. Thus, a reasonable consumer who observed the labels in their totality would not be misled. *See Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005) (the "allegedly deceptive act must be looked upon in light of the totality of the information made available to the plaintiff.").

Finally, the product contents are measured by weight, not volume. Defendants do not advertise or promise that cannisters contain any specific number of tablespoons. There is thus no basis for consumers to be misled about the number of tablespoons in each cannister. Each label displays an accurate measure of product contents in pounds, ounces, and/or grams. Plaintiffs do not allege that those objective measures of product contents are inaccurate or deceptive.

### 2. Plaintiffs' fail to allege actual reliance.

Each of Plaintiffs' consumer protection claims are deficient because they fail to allege actual reliance as described above in section I(D).

### 3. Plaintiffs' UCL claim fails to satisfy alternative prongs.

UCL claims come in "three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (2007) (quotation omitted). Plaintiffs' UCL claim based on fraud fails because the Beaumont labels are not untrue or misleading for the reasons stated above in section II(B)(1). Plaintiffs' UCL unlawful claim depends on violations of the CLRA and FAL, and fails because Plaintiffs CLRA and FAL claims are deficient. Plaintiffs' UCL unfairness claim is a derivative of their fraud and unlawful claims and should be dismissed for the same reasons. *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1104-05 (N.D. Cal. 2017) ("[W]here the unfair business practice alleged under the unfair prong of the UCL overlap entirely with the business practices addressed in the fraudulent and unlawful prongs of the UCL, the unfair prong of the UCL cannot survive if the claims under the other two prongs of the UCL do not survive.")

### C. Plaintiffs' breach of warranty claims (Counts VI and VII) must be dismissed.

Finally, Plaintiffs cannot establish that Coffee Holding breached any warranty. New York and California both provide that an express warranty is "any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." Cal. Com. Code § 2313; NY U.C.C. § 2-313. For implied warranties (now pleaded only under California law for the putative California subclass) California has adopted U.C.C. § 2-314, which provides that "[g]oods to be merchantable must ... [c]onform to the promises or affirmations of fact made on the container or label if any." Cal. Com. Code § 2314(2)(f).

Plaintiffs' breach of warranty claims fail for three reasons. First, the label contains no express affirmation or promise that the "makes up to" figure is achievable under all circumstances, much less by using Plaintiffs' 1:1 ratio. The "up to" clause "makes plain that there is no implied

14

warranty" that Plaintiffs can make that number of servings. Cal. Com. Code § 2316(3)(a). Second, the implied warranty claim fails because Plaintiffs do not allege that the product is unfit for human consumption. *See Mexicali Rose v. Superior Court,* 822 P.2d 1292, 1301 (Cal. 1992). Third, plaintiffs' lack privity with Coffee Holding. "[P]rivity is an essential element of a cause of action for breach of express warranty, unless the plaintiff claims to have been personally injured." *Tapia v. Davol, Inc.*, 116 F. Supp. 3d 1149, 1160 (S.D. Cal. Jul. 28, 2015) (citation omitted). The same is true for implied warranty claims. *Paramount Farms Intern. LLC v. Ventilex B.V.*, 500 Fed. Appx. 586, 588 (9th Cir. 2012); *see also Musgrave v. Taylor Farms Pacific, Inc.,* 2019 WL 8230850 *4-5 (noting that unfitness for human consumption must be at issue for "foodstuffs exception" to apply).

## CONCLUSION

For these reasons, the Court should grant Coffee Holding's motion to dismiss the Complaint, and for such other further relief as this Court deems appropriate.

Dated: June 22, 2021　　　　　　　　　　Respectfully Submitted,

/s/ Edward Casmere
Edward Casmere
RILEY SAFER HOLMES & CANCILA LLP
70 West Madison Street, Suite 2900
Chicago, IL 60602
T: (312) 471-8700
F: (312) 471-8701
ecasmere@rshc-law.com
*Attorney for Defendant*
COFFEE HOLDING COMPANY, INC.

15

## **CERTIFICATE OF SERVICE**

I, Edward Casmere, an attorney, certify that on June 22, 2021, I caused a copy of **Coffee Holding Company, Inc.'s Motion to Dismiss Plaintiffs' Complaint** to be filed electronically using the Court's CM/ECF system, which will generate notice of this filing to all counsel of record.

Dated: June 22, 2021    Respectfully Submitted,

/s/ Edward Casmere
Edward Casmere
RILEY SAFER HOLMES & CANCILA LLP
70 West Madison Street, Suite 2900
Chicago, IL 60602
T: (312) 471-8700
F: (312) 471-8701
ecasmere@rshc-law.com

*Attorney for Defendant*
*COFFEE HOLDING COMPANY, INC.*