**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| EILEEN BRODSKY and RHONDA DIAMOND, individually and on behalf of all others similarly situated, <br><br>                   Plaintiffs, <br><br>      v. <br><br> ALDI, INC., COFFEE HOLDING COMPANY, INC., and PAN AMERICAN COFFEE CO. LLC., <br><br>                   Defendants. | Civil Action No. 1:20-cv-07632 |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

PAGE(S)

I.     INTRODUCTION ................................................................................................ 1

II.    ARGUMENT ...................................................................................................... 2

    A.    PLAINTIFFS HAVE ARTICLE III STANDING TO ASSERT
        THEIR CLAIMS.................................................................................. 2

        1.    Plaintiffs Have Article III Standing To Assert Claims For
            Substantially Similar Products.......................................... 2

        2.    Plaintiffs Allege An Injury-In-Fact............................................. 3

        3.    The Aldi "Double Guarantee" Is Not An Adequate Remedy
            At Law ......................................................................................... 5

        4.    Plaintiffs Have Standing To Assert Claims For Injunctive
            Relief.......................................................................................... 6

    B.    PLAINTIFFS STATE CLAIMS UNDER CONSUMER
        PROTECTION STATUTES.................................................................. 7

        1.    Reasonable Consumer Deception Is A Question Of Fact............. 8

        2.    The "Up To" Statement Can Deceive Consumers........................ 8

        3.    The Complaint Adequately Alleges Unfair And Deceptive
            Business Practices Under the CLRA .......................................... 10

        4.    The Complaint Adequately Alleges A Violation Of The
            UCL........................................................................................... 11

        5.    The Complaint Adequately Alleges A Violation Of New
            York's General Business Law ..................................................... 12

    C.    PLAINTIFFS ADEQUATELY PLEADED BREACH OF
        WARRANTY CLAIMS ....................................................................... 13

        1.    Breach Of Express Warranty ..................................................... 13

        2.    Breach Of Implied Warranty ..................................................... 14

III.    CONCLUSION.................................................................................................. 15

i

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Allred v. Frito-Lay North America, Inc.*,
  2018 WL 1185227 (S.D. Cal. 2018)..................................................... 15

*Arthur v. United Indus. Corp.*,
  2018 WL 1472500 (C.D. Cal. 2018)...................................................... 9

*Arthur v. United Indus. Corp.*,
  2018 WL 2276636 (C.D. Cal. 2018)...................................................... 8

*Bruno v. Quten Research Inst., LLC*,
  280 F.R.D. 524 (C.D. Cal. 2011) ........................................................ 9

*Buonasera v. Honest Co., Inc.*,
  208 F. Supp. 3d 555 (S.D.N.Y. 2016).................................................. 14

*Camasta v. Jos. A. Bank Clothiers*,
  761 F.3d 732 (7th Cir. 2014) ............................................................... 6

*Carrol v. S.C. Johnsons & Son, Inc.*,
  2018 WL 1695421 (N.D. Ill. 2018) ................................................. 2, 6, 7

*Catalano v. BMW of N. Am., LLC*,
  167 F. Supp. 3d 540 (S.D.N.Y. 2016).................................................. 15

*Chapman v. First Index, Inc.*,
  796 F.3d 783 (7th Cir. 2015) ............................................................... 5

*Clemens v. DaimlerChrysler Corp.*,
  534 F.3d 1017 (9th Cir. 2008) ........................................................... 15

*Coffelt v. Kroger Co.*,
  2017 WL 10543343 (C.D. Cal. 2017)................................................... 11

*Cowen v. Lenny & Larry's Inc.*,
  2017 WL 4572201 (N.D. Ill. Oct. 12, 2017)............................................ 3

*Curran v. Bayer Healthcare LLC*,
  2019 WL 398685 (N.D. Ill., Jan. 31, 2019).............................................. 6

*Eike v. Allergan, Inc.*,
  850 F.3d 315 (7th Cir. 2017) ............................................................... 4

*Faistl v. Energy Plus Holdings, LLC*,
  2012 WL 3835815 (D.N.J. Sept. 4, 2012) ............................................. 10

*Fink v. Time Warner Cable*,
   837 F. Supp. 2d 279 (S.D.N.Y.  2011) ................................................................. 10

*Foman v. Davis*,
   371 U.S. 178 (1962) .............................................................................................. 15

*Freeman v. Time, Inc.*,
   68 F.3d 285 (9th Cir.1995) ................................................................................... 10

*Gerritsen v. Warner Bros.  Entm't Inc.*,
   112 F.Supp.3d 1011 (C.D. Cal. 2015) ................................................................... 8

*Geske v. PNY Technologies, Inc.*,
   503 F.Supp.3d 687 (N.D. Ill. 2020) .............................................................. 2, 3, 6

*Hadley v. Kellogg Sales Co.*,
   243 F. Supp. 3d 1074 (N.D. Cal. 2017) ......................................................... 11, 12

*Hendricks v. StarKist Co.*,
   30 F. Supp. 3d 917 (N.D. Cal. 2014) .................................................................... 15

*Herron v. Best Buy Co. Inc.*,
   924 F. Supp. 2d 1161 (E.D. Cal. 2013) .................................................................. 9

*Holstein v. City of Chicago*,
   29 F.3d 1145 (7th Cir. 1994) .................................................................................. 5

*In re Aqua Dots Products Liability Litigation*,
   654 F.3d 748 (7th Cir. 2011) .................................................................................. 4

*Izquierdo v. Mondelez Int'l, Inc.*,
   2016 WL 6459832 (S.D.N.Y. 2016) ..................................................................... 13

*Kasky v. Nike, Inc.*,
   45 P.3d 243 (Cal. 2002) .......................................................................................... 9

*Knowles v. Arris Int'l PLC*,
   2019 WL 3934781 (N.D. Cal 2019) ..................................................................... 10

*Kubilius v. Barilla Am., Inc.*,
   2019 WL 2861886 (N.D. Ill. 2019) ........................................................................ 2

*Maloney v. Verizon Internet Servs., Inc.*,
   413 F. App'x 997 (9th Cir. 2011) .................................................................... 8, 10

*Martin v. Monsanto Co.*,
   2017 WL 659014 (C.D. Cal. 2017) ....................................................................... 14

*McDonnell Douglas Corp. v. Thiokol Corp.*,
   124 F.3d 1173 (9th Cir.1997) ............................................................................... 14

*McKell v. Wash. Mut., Inc.*,
   49 Cal. Rptr. 3d 227 (Cal. Ct. App. 2006) ................................................................ 11

*Morris v. Mott's LLP*,
   2019 WL 948750 (C.D. Cal. 2019) ......................................................................... 15

*Muir v. NBTY, Inc.*,
   2016 WL 5234596 (N.D. Ill., Sept. 22, 2016) .......................................................... 6

*Orlander v. Staples, Inc.*,
   802 F.3d 289 (2d Cir. 2015) ................................................................................... 13

*Payton v. County of Kane*,
   308 F.3d 673 (7th Cir. 2002) ................................................................................... 3

*Quinn v. Walgreen Co.*,
   958 F. Supp. 2d 533 (S.D.N.Y. 2013) ...................................................................... 8

*Rand v. Monsanto Co.*,
   926 F.2d 596 (7th Cir. 1991) ................................................................................... 5

*Smith v. Ford Motor Co.*,
   462 Fed. Appx. 660 (9th Cir. 2011) ......................................................................... 7

*Smith-Brown v. Ulta Beauty, Inc.*,
   2019 WL 932022 (N.D. Ill. 2019) ........................................................................... 2

*Strama v. Toyota Motor Sales, USA, Inc.*,
   2016 WL 561936 (N.D. Ill., Feb. 12, 2016) ............................................................ 5

*Tears v. Boston Scientific Corp.*,
   344 F. Supp. 3d 500 (S.D.N.Y. 2018) ................................................................... 14

*Ulrich v. Probalance, Inc.*,
   2017 WL 3581183 (N.D. Ill. 2017) ......................................................................... 2

*Wagner v. Gen. Nutrition Corp.*,
   2017 WL 3070772 (N.D. Ill. 2017) ......................................................................... 2

*Walter v. Hughes Comm'cns, Inc.*,
   682 F. Supp. 2d 1031 (N.D. Cal. 2010) .................................................................. 9

*Weinstat v. Dentsply Internat., Inc.*,
   103 Cal. Rptr. 3d 614 (Cal. Ct. App. 2010) ........................................................... 13

*Williams v. Gerber Prod. Co.*,
   552 F.3d 934 (9th Cir. 2008) ....................................................................... passim

**STATUTES**

Bus. & Prof. Code § 17200 ............................................................................... 7, 11, 12

Cal. Bus. & Prof. Code § 17500 .................................................................................. 7

Cal. Civ. Code § 1750 ................................................................................................... 7

Cal. Civ. Code § 1770 ................................................................................................. 10

Cal. Civ. Code § 1770(a)(5) ................................................................................. 11, 12

Cal. Civ. Code § 1770(a)(9) ................................................................................. 11, 12

Cal. Civ. Code § 1784 .................................................................................................. 7

Cal. Com. Code § 2314(2)(f) ..................................................................................... 15

N.Y. Gen. Bus. Law §349 ................................................................................. 1, 12, 13

N.Y. Gen. Bus. Law § 350 ............................................................................... 1, 12, 13

## I.      INTRODUCTION

Defendants manufacture, distribute, advertise, and sell underfilled Beaumont coffee products (collectively, the "Coffee Products").  First Amended Complaint ("FAC") ¶ 1, ECF No. 23.  Defendants prominently represent on labels and packaging that its Coffee Products will produce a certain number of servings when they do not.  *Id.* at ¶ 3, 5.  Thus, Defendants have engaged in widespread false and deceptive advertising by claiming on the Products that they will "make up to" a certain amount, when they cannot, at the expense of the putative class.  *Id.* at ¶ 7. Plaintiffs are consumers who purchased Defendants' Coffee Products.  *Id.* at 12, 13.  Plaintiffs allege that they "relied to their detriment on Defendants' representations," and "would not have paid to purchase Defendants' Coffee Products – or would not have paid as much as they did to purchase them – had they known the truth about the products' actual serving yields."  *Id.* at ¶ 8.

Defendants now seek to avoid liability for selling mislabeled and underfilled Coffee Products by making several arguments – all of which fail.  First, Plaintiffs have Article III standing to bring all the claims in this case.  Further, contrary to Defendants' protestations, Plaintiffs have adequately pleaded all their consumer protection claims as required by California's Consumers Legal Remedies Act ("CLRA"), the Unfair Competition Law ("UCL"), and the False Advertising Law ("FAL"), as well as New York's General Business Law ("GBL") Sections 349 and 350.  Defendants further argue that Plaintiffs fail to state claims for breach of warranties, despite the fact that Plaintiffs plainly allege Defendants warranted that the Coffee Products contained an amount of coffee that "makes up to" a certain amount of cups.  *Id.* at ¶ 5.

Plaintiffs allege facts that are simple, clear, and powerful.  Defendants sell Coffee Products that are inadequately filled, according to their very own labels.  When this basic fact is understood, Defendants' arguments for dismissal must be rejected.

1

## II.     ARGUMENT

### A.     PLAINTIFFS HAVE ARTICLE III STANDING TO ASSERT THEIR CLAIMS

Defendants contend that Plaintiffs lack standing because: (1) Plaintiffs "cannot assert claims related to products they did not purchase;" (2) Plaintiffs have "not alleged a concrete and particularized injury arising from their own purchases of Beaumont coffee;" (3) Plaintiffs "cannot overcome the fact that Aldi offered them an adequate remedy they chose to forego;" and (4) Plaintiffs cannot seek injunctive relief because "it is unlikely they would suffer future harm." Defendants' Motion to Dismiss, ECF No. 25 ("MTD") at 6-8.  These arguments are meritless.

### 1.     Plaintiffs Have Article III Standing To Assert Claims For Substantially Similar Products

Defendants assert that Plaintiffs do not have Article III standing to assert claims related to "products they did not purchase" because Plaintiffs cannot "acquire standing by 'piggybacking' on purported injuries of unnamed class members."  MTD at 6.  That is wrong.

In *Geske v. PNY Technologies, Inc.*, 503 F.Supp.3d 687, 699 (N.D. Ill. 2020), Judge Seeger held that the "substantial similarity" test should be used to determine whether a plaintiff has Article III standing to assert claims on substantially similar products:

> [A] growing majority of courts apply a different standard: a class representative who purchased product X has standing to represent a class member who purchased product Y if the injuries are "substantially similar." *See Ulrich v. Probalance, Inc.*, 2017 WL 3581183, at *6 (N.D. Ill. 2017); *see also Kubilius*, 2019 WL 2861886, at *3 (collecting cases); *Smith-Brown v. Ulta Beauty, Inc.*, 2019 WL 932022, at *5 (N.D. Ill. 2019); *Carrol v. S.C. Johnsons & Son, Inc.*, 2018 WL 1695421, at *4 (N.D. Ill. 2018); *Wagner v. Gen. Nutrition Corp.*, 2017 WL 3070772, at *5 (N.D. Ill. 2017)… This Court joins the majority and holds that a plaintiff has standing to sue on behalf of purchasers who sustained a substantially similar injury.

*Geske*, 503 F.Supp.3d 687, 699 (some citations omitted; emphasis added).  All consumers in *Geske* "purchased a product that provides less power than represented on the packaging.  The only difference … [was] the capacity of the internal battery cell (and … the price)."  *Id.* at 700.

2

Here, the injuries are substantially similar. The misrepresentations across product lines are identical because "the front label [on each Coffee Product] prominently and conspicuously states the number of six-fluid-ounce servings of coffee the cannister will produce." FAC at ¶ 5. The crux of Plaintiffs' case is that "Defendants uniformly and systematically misrepresent[] the actual contents of their Coffee Products." *Id.* at ¶ 7. Here, Plaintiffs allege that "the Coffee Products do not yield the number of cups advertised by Defendants," and they contain only a fraction of the coffee advertised. *Id.* This "deceptive advertising" is the common issue across each of the Coffee Products, including "Defendants' 100% Colombian Roast, Class Roast, and Decaffeinated Coffee." *Id.* at ¶ 5. Therefore, all purchasers sustained a substantially similar injury – receiving less coffee than advertised on the labels.

Defendants' reliance on *Cowen v. Lenny & Larry's Inc.*, 2017 WL 4572201 (N.D. Ill. Oct. 12, 2017) is misplaced. In *Cowen*, the plaintiffs' injuries were not substantially similar. The labels on the cookie products inaccurately stated the nutrient content, and "miscalculate[d] … the percent daily value of protein" in the product in violation of the Food, Drug, and Cosmetic Act. *Cowen*, 2017 WL 4572201, at *1. The court held that "plaintiffs cannot 'piggy-back on the injuries of the unnamed class members' in order to acquire standing," and "a person cannot predicate standing on injury which he does not share." *Id.* at *3 (citing *Payton v. County of Kane*, 308 F.3d 673, 682 (7th Cir. 2002). Since injuries across consumers in *Cowen* differed broadly depending on the type of cookie purchased, there was not substantial similarity among products. Consumers of Defendants' Coffee Products here share the same injury; thus, Plaintiffs have standing to assert claims for all the substantially similar products alleged in the FAC.

### 2. Plaintiffs Allege An Injury-In-Fact

Defendants argue that "Plaintiffs have not alleged a concrete and particularized injury" sufficient to confer standing under Article III because "such disappointment … fail[s] to allege

an invasion of a legally protected interest." MTD at 6-7 (citing *Eike v. Allergan, Inc.*, 850 F.3d 315, 318 (7th Cir. 2017) (internal quotations omitted)). That is incorrect.

First, Defendants incorrectly rely on *Eike*. In *Eike*, the plaintiffs alleged that a different kind of eye drop "would be as or more effective, and also cheaper" than the defendant's product. The plaintiffs failed to allege "an invasion of a legally protected interest" because "[t]he fact that a seller does not sell the product that you want, or at the price you'd like to pay, is not an actionable injury; it is just a regret or disappointment." *Id.* Here, Plaintiffs are not alleging that a smaller or larger amount of coffee, or even that a different consistency of coffee grounds would be more effective or cheaper. Plaintiffs allege that Defendants engage in a practice that "causes unsuspecting consumers to spend more money for less than the advertised amount of coffee they believe they are purchasing." FAC at ¶ 3. This is more than mere regret or disappointment that "the seller does not sell the product that you want[.]" Here, Plaintiffs have suffered a financial loss at the hands of Defendants. That "Plaintiffs received the amount of coffee advertised by weight," MTD at 6, is irrelevant because Defendants are still falsely advertising that the weight stated can "produce a certain number of servings when, in fact [it] [does] not." FAC at ¶ 3.

Second, the injury suffered by Plaintiffs is financial, and "a financial injury creates standing." *In re Aqua Dots Products Liability Litigation*, 654 F.3d 748, 751 (7th Cir. 2011). Where a plaintiff alleges that "they paid more for the toys than they would have … A financial injury creates standing." *Id.* Plaintiffs here "were injured in that they (1) paid money for Coffee Products that were not what Defendants represented; (2) were deprived of the benefit of the bargain because the Coffee Products they purchased were different than what Defendants advertised; and (3) were deprived of the benefit of the bargain because the Coffee Products had less value than what Defendants represented." FAC at ¶ 25. Plaintiffs "would not have purchased the Coffee Products or would not have paid as much as they did for such products.

4

Thus, "each Plaintiff… suffered an injury in fact and lost money or property as result of Defendants' wrongful conduct." FAC at ¶ 26.

### 3. The Aldi "Double Guarantee" Is Not An Adequate Remedy At Law

Relying on an outdated and incorrect quote attributed to *Holstein v. City of Chicago*: "[o]nce the defendant offers to satisfy the plaintiff's entire demand, there is no dispute over which to litigate, and a plaintiff who refuses to acknowledge this loses outright… because he has no remaining stake," *Holstein v. City of Chicago*, 29 F.3d 1145, 1147 (7th Cir. 1994); Defendants state "where, as here, Plaintiffs can obtain adequate relief without resorting to litigation, they lack any cognizable stake in the outcome of the proceedings." MTD at 7. This quote originated in *Rand v. Monsanto Co.*, 926 F.2d 596, 598 (7th Cir. 1991), and was overruled in *Chapman v. First Index, Inc.*: "We overrule *Damasco, Thorogood, Rand*, and similar decisions to the extent they hold that a defendant's offer of full compensation moots the litigation or otherwise ends the Article III case or controversy." 796 F.3d 783, 787 (7th Cir. 2015).

Moreover, taking advantage of Aldi's "Double Guarantee" policy would not have been an adequate remedy for Plaintiffs. Defendants analogize the policy here with that in *Strama v. Toyota Motor Sales, USA, Inc.*, 2016 WL 561936 (N.D. Ill., Feb. 12, 2016), which held "plaintiff's failure to seek repair and reimbursement under defendant's enhanced warranty program was fatal to their standing." MTD at 7. *Strama* centers on an enhanced warranty program offered by the defendants to "provide for repair services and reimbursement of costs to customers whose vehicle had [an] oil consumption defect." *Strama*, 2016 WL 561936, at *2. Unlike a defective car part that can be solved with a recall and replacement program, Aldi's "Double Guarantee" policy does not solve the widespread deceptive advertising at hand. The quality of the Coffee Products is not at issue. Rather, here Defendants "intentionally mislead consumers into purchasing their Coffee Products based on false, misleading, and deceptive

5

advertising that portrays the Coffee Products as having characteristics that they do not, in fact, have." FAC at ¶ 22. Here, even if Plaintiffs were to receive a refund and a replacement product, the replacement Coffee Product would still be underfilled.

### 4. Plaintiffs Have Standing To Assert Claims For Injunctive Relief

Defendants argue that "because Plaintiffs are aware of the supposedly deceptive label, it is unlikely they would suffer future harm." MTD at 8. Not so. Defendants rely on *Camasta v. Jos. A. Bank Clothiers*, 761 F.3d 732, 741 (7th Cir. 2014) and *Geske*, 503 F.Supp.3d 687, 702, for the position that plaintiffs are not permitted injunctive relief when aware of defendants' deceptive sales practices. However, as Judge Norgle explained in *Carrol v. S.C. Johnsons & Son, Inc.*, 2018 WL 1695421, at *3 (N.D. Ill., Mar. 29, 2018), accepting this "interpretation of *Camasta* would preclude[] standing for injunctive relief in practically all false advertising cases," and it is an "overstate[ment] of the ruling in *Camasta*." Thus, courts have found that plaintiffs had standing to seek injunctive relief in false advertising cases.[1] In *Geske*, unlike here, the plaintiff did not include anything "in the complaint about a possible future purchase." 503 F.Supp.3d 687, 703.

Plaintiffs plainly allege that they are "susceptible to this reoccurring harm because they cannot be certain that Defendants have corrected this deceptive and false advertising scheme, and they want to continue to purchase Defendants' Coffee Products. Plaintiffs … currently cannot trust that Defendants will label and/or advertise their Coffee Products truthfully and accurately." FAC at ¶ 15. Here, Plaintiffs face that same threat of Defendants deceptively labeling the Coffee

---

[1] *See Muir v. NBTY, Inc.*, 2016 WL 5234596, at *10 (N.D. Ill., Sept. 22, 2016) (holding that "Defendants continu[ing] to advertise, distribute, label, manufacture, market, and sell the Products in a false, misleading, unfair, and deceptive manner … is enough to establish, at this stage in the proceedings, that Plaintiff has standing to seek injunctive relief."); *see also Curran v. Bayer Healthcare LLC*, 2019 WL 398685, at *5 (N.D. Ill., Jan. 31, 2019) (finding plaintiff successfully alleged future harm by expressing continued desire to purchase product if assured correct SPF rating is stated on packaging).

Products because, while they desire to purchase Coffee Products in the future, they cannot be

certain that Defendants' representations are true when they see the products on the store shelves.

Indeed, Plaintiffs allege just that: "Plaintiffs may again, by mistake, purchase a falsely-advertised

product from Defendants under the mistaken impression that Defendants have corrected their

deceptive and false advertising scheme." FAC at ¶ 16. Such allegations are more than sufficient

to allege standing to seek injunctive relief. *See Carrol*, 2018 WL 1695421, at *4 ("that

Defendant continues to manufacture, distribute, and deceptively label and advertise the Products

… [is] sufficient to plead standing for injunctive relief.").

### B. PLAINTIFFS STATE CLAIMS UNDER CONSUMER PROTECTION STATUTES

Defendants assert that Plaintiffs fail to state a claim under the CLRA, UCL[2], FAL, and

the GBL Sections 349 and 350. MTD at 9-14. That is meritless. To state a claim under the state

consumer protection laws, a plaintiff must allege: (1) a deceptive act or practice by defendant;

(2) an injury or loss suffered by plaintiff; and (3) a causal connection between the defendant's

deceptive act or practice and plaintiffs' injury. *See Williams v. Gerber Prod. Co*., 552 F.3d 934,

837 (9th Cir. 2008). (The CLRA, Cal. Civ. Code §§ 1750 – 1784, prohibits "unfair methods of

competition and unfair or deceptive acts or practices." Likewise, the UCL, Bus. & Prof. Code §

17200 *et seq,* prohibits any "unlawful, unfair or fraudulent business act or practice" as well as

"unfair, deceptive, untrue or misleading advertising" and incorporates the FAL, Cal. Bus. &

Prof. Code § 17500 *et seq*.).

---

[2] Defendants' assertion that Plaintiff's "CLRA claim is based on alleged violations [of] the UCL and FLA [sic]," MTD at 12, misconstrues the law. *See, e.g., Smith v. Ford Motor Co.*, 462 Fed. Appx. 660, 665 (9th Cir. 2011) ("The unlawful conduct prong of the UCL is derivative of other California laws, including the CLRA...").

### 1.  Reasonable Consumer Deception Is A Question Of Fact

Defendants contend "the Beaumont Coffee labels are not deceptive or misleading" as they "list the cannisters' net weight" and include the qualifier "up to."  MTD at 10.  Not so.

Whether a representation is likely to deceive is almost always a question of fact that is not appropriate for resolution on a motion to dismiss.  *Williams*, 552 F.3d at 938–39; *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 543 (S.D.N.Y. 2013).  Here, as in explained in more detail below, Plaintiffs allege that a reasonable purchaser would rely on Beaumont's representation that each cannister "'makes up to 210' six-fluid-ounce cups of coffee" especially since this is consistent with the prominent photo of a single cup of coffee on the cannister's front label.  *See* FAC at ¶¶ 5, 7.  This is not one of the "rare situation[s]" where dismissal on the pleadings is appropriate, nor is deception "impossible" here.  *See Williams*, 552 F.3d at 939.

### 2.  The "Up To" Statement Can Deceive Consumers

Relying on cases involving modem speeds and energy savings, Defendants argue that "'[a] reasonable consumer would not have been deceived… [by] the qualifier 'up to[.]'" MTD at 10 (citing *Maloney v. Verizon Internet Servs., Inc.*, 413 F. App'x 997, 999 (9th Cir. 2011)).  But reasonable consumers read and understand "up to" representations as providing, under normal conditions for use, the maximum results promised.  Indeed, the U.S.  Federal Trade Commission has explicitly determined this to be the case, stating that its "view" is "that advertisers using these claims should be able to substantiate that consumers are likely to achieve the maximum results promised under normal circumstances."[3]

---

[3] *See* https://www.ftc.gov/news-events/press-releases/2012/06/ftc-report-many-consumers-believe-claims-promise-maximum-results (last accessed June 29, 2021).  The Court can take judicial notice of the FTC's press release article.  *See Arthur v. United Indus. Corp.*, 2018 WL 2276636, at *4 (C.D. Cal. 2018) (taking judicial notice of the same FTC press release article); *Gerritsen v. Warner Bros.  Entm't Inc.*, 112 F.Supp.3d 1011, 1033 (C.D. Cal. 2015) ("Under Rule 201, the court can take judicial notice of public records and government documents available from reliable sources on the Internet, such as websites run by governmental agencies.").

A substantial body of law prohibits the type of "up to" representations made here. In *Arthur v. United Indus. Corp.*, 2018 WL 1472500, at *6-7 (C.D. Cal. 2018), the court held that it could not "conclude as a matter of law that a reasonable consumer would not be misled by the Concentrate label's 'makes up to' language." *Id.* Under *Arthur*'s reasoning, the Court should not decide on the pleadings how a reasonable consumer could interpret the "up to" statement. *See id. at* *7. A plethora of courts have reached the same conclusion.[4]

Here, a consumer who reads the phrase "make[] up to 210 6 oz cups" reasonably believes (as Plaintiffs did) that the Product will make 210 cups if the directions are followed. FAC ¶ 4. Conversely, a consumer reading the same phrase would not reasonably think that the Product will make only 137 cups, or approximately 65% of the "up to" servings represented. *Id.* ¶ 5. Unlike in *Arthur*, the Coffee Products at issue here contain no instructions which, when followed, could meet the "up to" representation. *See* 2018 WL 1472500 at *6-7. Even using the more diluted formula for brewing 10 servings of coffee, the cannister would only make approximately 171 cups of coffee, 18.5% fewer cups of coffee than promised. Moreover, the underlying premise of Defendants' argument is legally without merit, as consumer protection laws "prohibit 'not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'" *Kasky v. Nike, Inc.*, 45 P.3d 243, 250 (Cal. 2002), *as modified* (May 22, 2002); *Williams*, 552 F.3d at 938 (same, adopting *Kasky*).

---

[4] *See Herron v. Best Buy Co. Inc.*, 924 F. Supp. 2d 1161, 1172–73 (E.D. Cal. 2013) (finding an "up to" battery life statement actionable because product was not accompanied by any disclosures and plaintiff alleged all laptops had battery life substantially less than that represented); *Walter v. Hughes Comm'cns, Inc.*, 682 F. Supp. 2d 1031, 1043 (N.D. Cal. 2010) (denying motion to dismiss based on allegations that plaintiff "was unable to experience the speeds that [defendant] had advertised its service as reaching 'up to,' even during non-peak hours"); *Bruno v. Quten Research Inst.*, LLC, 280 F.R.D. 524, 537 (C.D. Cal. 2011) (certifying Rule 23 class action under the UCL and CLRA where "the central predominating question is whether Defendants' marketing statement about 'up to 6X BETTER ABSORPTION' [is] materially misleading").

9

Defendants' cited cases are unavailing. *See* MTD at 10. Three involved internet connection speeds while a fourth involved an energy supplier's claim of monthly savings, and all are readily distinguishable. *See Maloney v. Verizon Internet Servs., Inc.*, 413 F. App'x 997, 999 (9th Cir. 2011) (affirming the dismissal of a UCL action against Verizon regarding internet service promising "a speed 'up to 3 Mbps'" because the contract explained that internet speeds will vary); *Knowles v. Arris Int'l PLC*, 2019 WL 3934781 (N.D. Cal 2019) (dismissing a UCL action after plaintiff's expert conceded that Arris's modem could reach the promised speed and Arris never represented that it could consistently deliver this speed); *Fink v. Time Warner Cable*, 837 F. Supp. 2d 279, 283 (S.D.N.Y. 2011) (dismissing plaintiffs' claim because their internet speeds were slower only when using certain applications); *Faistl v. Energy Plus Holdings, LLC*, 2012 WL 3835815 (D.N.J. Sept. 4, 2012) (dismissing plaintiff's fraud claim because defendant disclosed that prices were variable and disclaimed any warranty regarding future savings).

The serving representations in this case are fundamentally different from internet service and electricity. While consumers understand that internet connection speeds vary, the amount of coffee a cannister of Beaumont's makes is much less variable and does not amount to the promised number of servings when the instructions are followed. *See* FAC at ¶¶ 6, 7; *see also Maloney*, 413 F. App'x 997 at 999; *Knowles*, 2019 WL 3934781, at *14. Moreover, Beaumont's label includes no mention that the number of servings per cannister may vary, nor is there a disclaimer. *See id. at* ¶ 55; *see also Faistl*, 2012 WL 3835815, at *4.

### 3. The Complaint Adequately Alleges Unfair And Deceptive Business Practices Under the CLRA

The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices" and claims are governed by the "reasonable consumer test." Cal. Civ. Code § 1770; *Williams*, 552 F.3d at 938 (citing *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir.1995)).

Additionally, plaintiffs must sufficiently allege economic injury and actual reliance on the material misrepresentation. *Coffelt v. Kroger Co.*, 2017 WL 10543343, at *5 (C.D. Cal. 2017).

Here, the Complaint alleges that Defendants' unfair and deceptive business practices are in violation of the CLRA. First, Defendants have violated § 1770(a)(5) by representing that the Coffee Products have characteristics they do not have. FAC ¶ 40; *see id.* ¶ 22 ("Defendants willfully misrepresent[] and omit[] from the labeling and packaging of their Coffee Products… the number of servings of coffee that each cannister will produce."). Second, Defendants have violated § 1770(a)(9) by advertising the Coffee Products with the intent not to sell them as advertised. *Id.* ¶ 40 ; *see id.* ¶ 7 ("the Coffee Products do not yield the number of cups advertised.by Defendants"). Further, as discussed above, Plaintiff Diamond has sufficiently pleaded a concrete injury under the CLRA by alleging she paid more for the Coffee Products based on the serving representation. *See id.* at ¶ 14. Additionally, Plaintiffs allege reliance. *See id.* at ¶ 24.

### 4.  The Complaint Adequately Alleges A Violation Of The UCL

A plaintiff asserts a violation of the UCL by alleging that a defendant's conduct is either unfair, unlawful, or fraudulent. Bus. & Prof. Code § 17200. The unfair prong of the UCL prohibits a business practice that "violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *McKell v. Wash. Mut.*, Inc., 49 Cal. Rptr. 3d 227, 240 (Cal. Ct. App. 2006), *cited with approval in Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1104 (N.D. Cal. 2017). Whether a business practice is unfair will usually be a question of fact. *Id.* at 1472.

Defendants claim that "Plaintiffs allege no unfair competition under the UCL." MTD at 11. But the Complaint alleges that "Defendants have engaged, and continue to engage, in a false, misleading, and deceptive advertising campaign that misleads consumers into believing that the

11

Coffee Products they purchase will yield a greater number of servings than each cannister actually contains." FAC at ¶ 54. Further, "Defendants' conduct harms consumers and hurts market competition" and injures Plaintiffs because it "violates consumers' reasonable expectations." *Id.* at ¶ 56. While Defendants claim that "Plaintiffs do not allege that their injury is substantial and outweighed by the product's benefit," the Complaint alleges that "no legitimate reasons, justifications, or motives outweigh the harm and adverse impact of Defendants' conduct on members of the general consuming public." MTD at 12; FAC at ¶ 55.

The Complaint also adequately alleges that Defendants' business practices are unlawful under the UCL. Defendants' argue that the "Complaint fails to allege defendants violated any applicable statute," when, in fact, the Complaint alleges Defendants have unlawfully marketed and advertised their Beaumont Coffee Products in violation of Cal. Civ. Code §§ 1770(a)(5) and 1770(a)(9). MTD at 12; FAC at ¶ 61. The Complaint further alleges that Defendants' business practices also constitute violations of the FAL, as detailed above. *Id.* at ¶ 62.

Finally, Plaintiff adequately alleges that Defendants' business practices were fraudulent and that Defendants have engaged in deceptive advertising practices, both of which are violations of the UCL. *See* Bus. & Prof. Code § 17200 *et seq*; FAC at ¶¶ 3, 51. Under the UCL, a fraudulent business practice is one that is "likely to deceive" a "reasonable consumer." *Hadley*, 243 F. Supp. 3d 1074 at 1089; *see also Williams*, 552 F.3d at 938-39 (whether a representation is likely to deceive is a question of fact for which resolution on a motion to dismiss is improper). As discussed above, Plaintiffs adequately allege that Defendants' conduct misleads the "reasonable consumer." *See supra* § II(B)(1). Nothing more is required.

### 5. <u>The Complaint Adequately Alleges A Violation Of New York's General Business Law</u>

New York GBL §§ 349 and 350 prohibit "[d]eceptive acts or practices" and "false advertising" in the conduct of any business, trade or commerce or in the furnishing of any

service in this state." N.Y. Gen. Bus. Law §§ 349, 350. Under either section, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) [the] plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (citation omitted).

Defendants' assertion that "Plaintiff Brodsky similarly fails to plead a violation of New York's consumer protection laws" regurgitates their arguments regarding Plaintiff Diamond's California consumer protection claims, and similarly crumbles under scrutiny. *See* MTD at 13. First, Defendants argue that the "'makes up to' statement is not misleading or deceptive," however as discussed above, that is nonsense. *See id.*; *see supra* § II(B)(2). Second, Defendants argue that "because Brodsky does not dispute that she received the amount of coffee advertised, her 'underfill' theory does not plead a cognizable injury under GBL §[§] 349 or 350." *Id.* at 14. But Rather than merely alleging that Defendants' products are underfilled, Plaintiff Brodsky also alleges if she had known Defendants' representations were false, she would not have paid as much for the Coffee Products, satisfying the requirements of Section 349.[5] FAC ¶¶ 8, 76.

## C. PLAINTIFFS ADEQUATELY PLEADED BREACH OF WARRANTY CLAIMS

### 1. Breach Of Express Warranty

To allege breach of warranty under California law, a plaintiff must prove "(1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *Weinstat v. Dentsply Internat., Inc.*, 103 Cal. Rptr. 3d 614, 626 (Cal. Ct. App. 2010). Similarly, under New York law, a "breach of express warranty claim requires proof that such an affirmation or

---

[5] *See Izquierdo v. Mondelez Int'l, Inc.*, 2016 WL 6459832, at *7 (S.D.N.Y. 2016) ("An actual injury claim under Section 349 typically requires a plaintiff to 'allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase.'") (quoting *Orlander*, 802 F.3d at 302).

promise existed, that it was breached, and that plaintiff detrimentally relied on the warranty."
*Tears v. Boston Scientific Corp.*, 344 F. Supp. 3d 500, 512 (S.D.N.Y. 2018). Defendants argue
that Plaintiffs' express warranty claim must fail because "[t]he label contains no express
affirmation or promise that the "makes up to" figure is achievable under all circumstances."
MTD at 15. However, as with Plaintiffs' FAL claims, whether a challenged misrepresentation
constitutes an affirmation of fact, and therefore an express warranty, is normally a question of
fact for the jury.[6]

Plaintiffs sufficiently allege breach of express warranty. Plaintiffs allege that (1) the
serving representation on each Product is an affirmation of fact or promise that the Product can
make that many promised 6 oz cups ("Plaintiffs purchased Beaumont Coffee Products that
prominently advertise on their front labels that they 'MAKE[] UP TO 210 6 OZ CUPS.'); (2)
Plaintiffs relied on the representations in purchasing the Products, which were part of the basis of
their bargains ("Plaintiffs, the Class, and Subclass Members relied to their detriment on
Defendants' representations regarding the number of servings each Coffee Product would
yield"); and (3) Defendants breached these warranties by selling the Products with less ground
coffee than required to make the promised servings ("the Coffee Products do not yield the cups
advertised by Defendants.").[7] FAC ¶¶ 4, 8, 7.

## 2. **Breach Of Implied Warranty**

Defendants assert that "the implied warranty claim fails because Plaintiffs do not allege
that the product is unfit for human consumption." MTD at 15. That is wrong. To state a claim

---

[6] *See McDonnell Douglas Corp. v. Thiokol Corp.*, 124 F.3d 1173, 1176 (9th Cir.1997)
("[W]hether seller affirmed a fact amounting to an express warranty is a question of fact");
*Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 567 (S.D.N.Y. 2016) (holding whether "all
natural" is an express warranty is a question of fact not appropriate for a motion to dismiss).

[7] *See also Martin v. Monsanto Co.*, 2017 WL 659014, at *1, 5 (C.D. Cal. 2017) (denying
motion to dismiss breach of express warranty claim where plaintiff alleged that, when users
follow the back-panel instructions, the product only made about half of the amount represented
on the front label). Thus, Plaintiffs' express warranty claims are adequately pleaded.

for breach of the implied warranty of merchantability, it is sufficient that a plaintiff alleges that a product "do[es] not conform to the promises or affirmations contained on the container or label." *Morris v. Mott's LLP*, 2019 WL 948750, at *6 (C.D. Cal. 2019) (citing *Allred v. Frito-Lay North America, Inc.*, 2018 WL 1185227, at *6 (S.D. Cal. 2018)); Cal. Com. Code § 2314(2)(f).  Again, whether the Coffee Products conform to the promised serving representations on the label is a question of fact that cannot be resolved at the motion-to-dismiss stage.

Further, Defendants' contention that Plaintiffs' warranty claims must be dismissed because "Plaintiffs lack privity with Pan American" is similarly meritless.  *See* MTD at 15. While generally, "a plaintiff asserting breach of warranty claims must stand in vertical contractual privity with the defendant… [s]ome particularized exceptions to the rule exist.  The first arises when the plaintiff relies on written labels or advertisements of a manufacturer." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008); *see also Hendricks v. StarKist Co.*, 30 F. Supp. 3d 917 at 932 (N.D. Cal. 2014) (implied warranty claims involving food products).  Similarly, New York "has long since dispensed with the privity requirement for express warranty claims."  *Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 556–57 (S.D.N.Y. 2016).  Thus, because Plaintiffs' claims hinge on Defendants' deceptive labeling and marketing, privity is not required to allege breaches of warranty.  *See id.*

## III.  CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be denied in its entirety. Alternatively, if the motion is granted in any respect, Plaintiffs should be given leave to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962) ("Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires; this mandate is to be heeded …. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.").

Dated: July 14, 2021               Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:       */s/ L. Timothy Fisher*
                L. Timothy Fisher

L. Timothy Fisher
Brittany S. Scott
1990 N. California Blvd., Suite 940
Walnut Creek, CA 94596
Tel: (925) 300-4455
Fax: (925) 407-2700
Email: ltfisher@bursor.com
        bscott@bursor.com

**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLC**
Carl V. Malmstrom (Attorney No. 38819)
111 W. Jackson Blvd., Suite 1700
Chicago, IL 60604
Tel: (312) 984-0000
Fax: (212) 686-0114
E-mail: malmstrom@whafh.com

*Attorneys for Plaintiffs*

16

**CERTIFICATE OF SERVICE**

      I certify that on the 14th day of July, 2021, I caused the foregoing document to be filed with the Clerk of the Court using the CM/ECF system, which will automatically send email notification of such filing to the attorneys of record.

          */s/ L. Timothy Fisher*
            L. Timothy Fisher
