IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

EILEEN BRODSKY and RHONDA DIAMOND, )
individually and on behalf of all others similarly )
situated, )
                                    )
                Plaintiffs, )         Case No.   20 C 7632
                                    )
        v. )         Judge Robert W. Gettleman
                                    )
ALDI INC., COFFEE HOLDING COMPANY, )
INC., and PAN AMERICAN COFFEE CO. LLC, )
                                    )
              Defendants. )

## MEMORANDUM OPINION AND ORDER

T.S. Elliot "measured out [his] life with coffee spoons," and it appears that plaintiffs have done the same.[1]   Plaintiffs Eileen Brodsky and Rhonda Diamond bring a putative class action complaint against Defendants Aldi Inc., Coffee Holding Company Inc., and Pan American Coffee Co., LLC, alleging violations of various consumer protection laws involving defendants' coffee products.   The first amended complaint alleges: a violation of the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750 et seq. ("CLRA") (Count I); a violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq. ("UCL") (Count II); a violation of the California False Advertising Law, Cal. Bus. & Prof. Code § 17500, et seq. ("FAL") (Count III); a violation of the New York General Business Law §§ 349, 350 ("NYGBL") (Counts IV and V); breach of express warranty under California and New York law (Count VI); and breach of implied warranty under New York law (Count VII).   Plaintiffs seek

---

[1] T.S. Elliot, The Love Song of J. Alfred Prufrock.

both damages and injunctive relief.   Defendants have moved to dismiss (Doc. 24; Doc. 26).
For the reasons stated below, defendants' motions are granted.

## BACKGROUND

Plaintiffs Eileen Brodsky and Rhoda Diamond bought Beaumont coffee from Aldi
grocery stores in their home states of New York and California.   Defendant Coffee Holding
Company, Inc. and defendant Pan American Coffee US, LLC are the coffee roasters for the
Beaumont brand.   Plaintiffs seek to represent a class of "all people who purchased any
Beaumont Coffee Product falsely advertising the number of coffee cups that the product would
purportedly produce during the applicable statute of limitations and who have not received a
refund or credit for their purchase."   Brodsky also seeks to represent a subclass consisting of
class members who reside in New York (the "New York Subclass"), and Diamond seeks to
represent a subclass consisting of members who reside in California (the "California Subclass").

Brodsky alleges that she bought a 22.4-ounce cannister of Beaumont 100% Colombian
Ground Coffee with a label that the cannister "makes up to" 210 six-ounce cups of coffee.
Diamond alleges that she bought a 22.4-ounce cannister of Beaumont Classic Roast with a label
that the cannister "makes up to" 210 six-ounce cups of coffee.[2]   The complaint also includes
allegations regarding Beaumont's Decaffeinated Coffee, but there are no allegations that either
plaintiff purchased the Decaffeinated Coffee products.

Plaintiffs accuse defendants of underfilling their cannisters of coffee and allege that the
Beaumont label is "false and misleading and omits material information" and "violates

---

[2] Plaintiffs' allegations conflict with the chart in their complaint.   The chart indicates that the Classic Roast advertises
240 six-ounce cups of coffee, but elsewhere in the complaint plaintiffs state that the Classic Roast advertises 210 six-
ounce cups of coffee.

consumer's reasonable expectations." According to plaintiffs, the labels advertise 210 six-ounce cups of coffee, but in fact only produce 137 cups for the 100% Colombian Roast and 173 cups for the Classic Roast. Plaintiffs get their calculations based on using one tablespoon per six-ounce cup of coffee. The label is reproduced below and contains five relevant elements.



First, the amount of coffee is represented by the "net weight" of the contents, and is provided in ounces, pounds, and grams. There are no allegations that the weight of the product is inaccurate. Second, the "Brewing Instructions" direct the consumer to fill the coffee pot to the desired level. The label recommends using "1 Tbsp" of ground coffee to make "1 Serving (6 fl. oz)." The brewing instructions also contain measurements for other servings: ½ cup of ground coffee (eight tablespoons) to make 10 servings; and 1 ½ cups of coffee (24 tablespoons) to make 30 servings. Thus, the label provides measurements other than a one tablespoon to one six-ounce cup ratio. Third, the label advises "[u]se more or less coffee to get desired strength." Fourth, the label states that the cannister "makes up to 210 6 oz cups." (emphasis added). Finally, defendant Aldi guarantees that, if a customer is dissatisfied, Aldi will replace the item

<u>and</u> refund the purchaser's money.   There is no indication that plaintiffs availed themselves of this remedy.

## **DISCUSSION**

Defendants seek dismissal under Rule 12(b)(1) for lack of Article III standing and under Rule 12(b)(6) for failure to state a claim.   Because standing is jurisdictional, the court must consider it before reaching the merits.   See <u>Hinrichs v. Speaker of the House of Representatives of Ind. Gen. Assembly</u>, 506 F.3d 584, 590 (7th Cir. 2007).

### I.     **Standing**

Defendants first argue that plaintiffs lack standing for several reasons: plaintiffs did not suffer an actual injury; they did not purchase one of the products alleged in the complaint; they did not avail themselves of an available remedy; and plaintiffs lack standing for an injunction because future injury is unlikely.

Courts use a three-prong test to determine whether a party has standing to bring a claim. See <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992).   The plaintiff must have, "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."   <u>Spokeo, Inc. v. Robins</u>, -- U.S. --, 136 S.Ct. 1540, 1547 (2016).   Starting with defendants' first argument, an injury in fact is the "[f]irst and foremost" of standing's three requirements.   <u>Id.</u> (quoting <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 118 (1998)).   Under <u>Lujan</u>, an injury in fact means a harm that is "concrete and particularized," and "actual or imminent, not conjectural or hypothetical." <u>Friends of the Earth, Inc. v. Laidlaw Envtl. Servs (TOC), Inc.</u>, 528 U.S. 167, 180-81 (2000) (citing <u>Lujan</u>, 504 U.S. at 560).

4

Contrary to defendants' arguments, plaintiffs have alleged an actual injury. The first amended complaint alleges that plaintiffs suffered an economic injury by overpaying for a product that underdelivers. Courts have recognized that economic injuries support standing. See Sierra Club v. Morton, 405 U.S. 727, 733 (1972) ("[P]alpable economic injuries have long been recognized as sufficient to lay the basis for standing."); In re Aqua Dots Products Liability Litigation, 654 F.3d 748 (7th Cir. 2011) ("[P]laintiffs' loss is financial: they paid more for the toys than they would have, had they known the risks the beads posed to children. A financial injury creates standing."). Defendants' arguments on this point closely resemble merits arguments: that plaintiffs could not have been injured because there was no promise to provide a certain number of cups of coffee. But these arguments miss the point. Plaintiffs' complaint alleges an economic injury, which is sufficient for standing purposes.

However, plaintiffs do lack standing for a product they did not purchase. The first amended complaint asserts claims against a group of three products: (1) Classic Roast; (2) 100% Colombian Roast; and (3) Decaffeinated Coffee. The complaint indicates that Brodsky bought the 100% Colombian Roast, and Diamond bought the Classic Roast, but nowhere do plaintiffs allege that they bought the Decaffeinated Coffee. Plaintiffs assert that they may bring claims for products that are substantially similar to those they did purchase. The court disagrees. "[T]he law on whether an individual has standing to represent putative class members for products he or she did not purchase is unsettled across the country." Cowen v. Leny & Larry's, Inc., 2017 WL 4572201, at *3 (N.D. Ill. Oct. 12, 2017). Each party cites cases that support their position and, having reviewed the underlying rationales, the court declines to adopt the substantial similarity test. The court is convinced that "a named plaintiff cannot acquire

5

standing to sue by bringing his action on behalf of others who suffered an injury which would have afforded them standing had they been named plaintiffs," because "a person cannot predicate standing on an injury which he does not share."   Id. (citing Payton v. County of Kane, 308 F.3d 673, 682 (7th Cir. 2002)).   Plaintiffs' claims regarding the Decaffeinated Coffee are therefore dismissed.

Defendants' third standing argument is that plaintiffs lack standing because they have not availed themselves of an available remedy—namely, a refund and a free cannister of coffee.   In making this argument, defendants rely on a single uncited district court case, Strama v. Toyota Motor Sales, USA, Inc., 2016 WL 562936 (N.D. Ill. Feb. 12, 2016), and an older Seventh Circuit opinion, Holstein v. City of Chicago, 29 F.3d 1145 (7th Cir. 1994), that relies on language that has since been overturned.   While it does seem odd that plaintiffs would resort to a federal lawsuit instead of accepting the refund and free cannister of coffee (especially since the latter remedies plaintiffs' main grievance by providing more coffee), this is not a basis to dismiss the suit.

Finally, defendants argue that plaintiffs lack standing to seek injunctive relief.   The gist of the argument is that there is no risk of future harm and thus no need for an injunction.   To establish injury in fact when seeking prospective injunctive relief, "a plaintiff must allege a 'real and immediate' threat of future violations of their rights."   Scherr v. Marriott Int'l, Inc., 703 F.3d 1069, 1074 (7th Cir. 2013) (citing City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983)). Defendants argue that plaintiffs' complaint fails this test because the allegations of future harm are hypothetical and speculative.   The court agrees.

"Most courts in this district have held that a plaintiff who alleges only past deception cannot pursue injunctive relief because they have not alleged a 'real and imminent threat' of future violations of their rights."   Geske v. PNY Technologies, 503 F.Supp.3d 687, 701 (N.D. Ill. 2020) (citing Scherr, 703 F.3d at 1074); see also Benson v. Fannie May Confections Brands, Inc., 2018 WL 1087639, at *5 (N.D. Ill. 2018) ("Most courts to address similar circumstances have held that absent some concrete basis to conclude that the plaintiffs will or must purchase the product again in the future and be deceived, they cannot meet the standing requirement for injunctive relief claims."); Camasta v. Jos. A. Bank Clothiers, Inc., 761 F.3d 732, 741 (7th Cir. 2014) (Once a plaintiff is aware of the defendant's "sales practices, he is not likely to be harmed by the practices in the future").   Indeed, "once a plaintiff knows that a product is deficient, he or she is unlikely to purchase it again, and therefore unlikely to sustain future harm. A 'fool me once' plaintiff does not need an injunction if he or she is not going to buy the same product again anyway. There is no risk of 'fool me twice,' so there is no basis for an injunction."   Geske, 503 F.Supp.3d at 702.

The threat of future injury must be imminent.   Here, there is no indication that plaintiffs must purchase the product, and their claims that they may purchase other coffee items produced by defendants in the future are conclusory, conjectural, and speculative.   Plaintiffs have not alleged a risk of future harm sufficient to support standing for an injunction against defendants.

## II.   Failure to State a Claim

Plaintiffs bring claims under various state consumer protection statutes.   While the statutes differ in certain particulars, "all share a common requirement: to state a claim, a plaintiff must allege conduct that plausibly could deceive a reasonable consumer."   In re 100% Grated

Parmesan Cheese Marketing and Sales Practices Litigation, 275 F.Supp.3d 910, 920 (N.D. Ill. 2017); see also, e.g., Ebner v. Fresh, Inc., 838 F.3d 958, 965 (9th Cir. 2016) ("Plaintiffs claims under [UCL and CLRA] are governed by the reasonable consumer test."); Fink v. Time Warner Cable, 714 F.3d 739, 741 (2d Cir. 2013) ("To prevail on their consumer fraud claims under New York and California law, Plaintiffs must establish that Time Warner's allegedly deceptive advertisements were likely to mislead a reasonable consumer acting reasonably under the circumstances.").

For purposes of these state consumer protection statutes, "a statement is deceptive if it creates a likelihood of deception or has the capacity to deceive." In re 100% Grated Parmesan Cheese, 275 F.Supp.3d at 920. On a motion to dismiss, the question is "whether the allegedly false and misleading statements can be read to create a likelihood or to have the capacity to deceive a reasonable consumer." Bober v. Glaxo Wellcome PLC, 246 F.3d 934, 938 (7th Cir. 2001). To clear this bar, there must be "more than a mere possibility that [a] label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner. Rather, the reasonable consumer standard requires a probability that a significant portion of the general consuming public…, acting reasonably in the circumstances, could be misled." Ebner, 838 F.3d at 965. "This standard requires a showing of probable, not possible, deception." Zlotnick v. Premier Sales Grp., Inc., 480 F.3d 1281, 1284 (11th Cir. 2007).

Although a marketing practice's deceptiveness is often a question of fact inappropriate for resolution at the pleading stage, Davis v. HSBC Bank Nev., N.A., 691 F.3d 1152, 1161 (9th Cir. 2012), "the primary evidence in a false advertising case is the advertising itself," Williams v. Gerber Prods. Co., 552 F.3d 934, 938 (9th Cir. 2008); accord Fink, 714 F.3d at 742. It is

therefore "well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." Fink, 714 F.3d at 741.

Here, it is implausible that reasonable consumers would be deceived by defendants' packaging. First, there is no allegation that the coffee cannisters do not weigh as advertised. It appears that the net weight listed on the cannister is truthful, thus there can be no plausible claim of underfilling the cannisters. The only issue is whether the "up to" language is deceptive and likely to mislead reasonable consumers. Courts that have addressed the "up to" language routinely find that it does not deceive or confuse consumers. See, e.g., Maloney v. Verizon Internet Servs., Inc., 413 F.App'x 997, 999-1000 (9th Cir. 2011) (affirming dismissal of a UCL claim and holding a "reasonable consumer would not have been deceived…the qualifier 'up to' (meaning the same or less than)…."); Knowles v. Arris Int'l PLC, 2019 WL 3934781, at *14 (N.D. Cal. Aug. 20, 2019) ("Arris's statements…include the qualifier 'up to,' so no reasonable consumer would believe that Arris guarantees gigabit download speeds and 32 download channels."); Fink, 837 F.Supp.2d at 283-84 (the "qualifi[cation] of the phrase 'up to []'…would lead a reasonable consumer to expect that speeds could be less than advertised"). Here, no reasonable consumer would understand the "up to" language to be a guarantee. This language is not a promise that the cannister will make that amount, but just that it can under certain circumstances. Put another way, it is clearly a ceiling, not a floor.

Contrary to plaintiffs' contentions, the label does not promise the maximum yield, and it certainly does not promise that the maximum yield will be achieved by following the instructions for a single serving. The labels clearly describe various factors that may affect yield, including the number of servings made at one time (which would require less ground coffee than making a

9

single serving at a time), and the desired strength of each serving. As defendants repeatedly note, it is "axiomatic that no two people like their coffee exactly the same way," and people enjoy—and intentionally brew—coffee at different strengths. The label does not guarantee that the cannister will yield 210 cups using the 1 tablespoon to 1 cup ratio, which the complaint relies on to support plaintiffs' claim of a significant undercount. Plaintiffs fail to allege that the cannister cannot yield 210 cups of coffee under any circumstances. Defendants' labeling, when viewed as a whole, thus is not deceptive.

Plaintiffs' express and implied warranty claims suffer from the same fatal flaw as their consumer protection claims: a reasonable consumer would not understand defendants' label to warrant that the products make 210 six-ounce cups of coffee. The express warranty claims can succeed only if a "reasonable consumer could plausibly read [defendant's statements] to be specific, factual representations that the product contain[s]" 210 six-ounce cups of coffee, but must fail if the labels, viewed objectively, make no such promise. In re 100% Grated Parmesan Cheese, 275 F.Supp.3d at 925 (citing Bohac v. Gen. Mills Inc., 2014 WL 1266848, at *9 (N.D. Cal. Mar. 26, 2014)). For the reasons stated above, a reasonable consumer could not plausibly read the label as plaintiffs suggest. Consequently, plaintiffs' express and implied warranty claims fail.

10

## CONCLUSION

For the reasons stated above, defendants' motions to dismiss (Doc. 24; Doc. 26) are granted.

ENTER:

**Robert W. Gettleman**
**United States District Judge**

**DATE: September 28, 2021**